## THOMAS v. YOUNG.

Court of Appeals of District of Columbia.
Submitted October 5, 1927. Decided
November 7, 1927.

No. 4577.

1. **Descent and distribution** ⊜⇒14—**Ancestral real estate of wife descends to surviving brother, in absence of will (Code § 945).**

Under Code, § 945, in absence of a will, wife's real estate, which is ancestral property, descends to her surviving brother as her sole heir at law.

2. **Wills** ⊜⇒324(2, 3)—**Evidence of mental incapacity and undue influence held sufficient to go to jury.**

In will contest for mental incapacity and undue influence, evidence *held* sufficient to go to jury.

3. **Wills** ⊜⇒54(3), 165(5)—**Declarations of testatrix as to disposition of property held competent on issue of mental capacity and undue influence.**

In will contest for mental incapacity and undue influence, evidence as to conversation between testatrix and her brother as to disposition of certain property was competent as reflecting on issue of mental capacity and undue influence at date of will, especially where declarations of testatrix were repeated at various times up to date of will.

4. **Wills** ⊜⇒330(1)—**Instruction in will contest that "sound and disposing mind" meant sufficient mental capacity at time of executing instrument to dispose of property with "judgment and understanding" held not erroneous.**

In will contest for mental incapacity and undue influence, charge that expression "sound and disposing mind" meant that decedent must at time of execution of instrument have sufficient mental capacity to dispose of her property with "judgment and understanding," *held* not erroneous, since it is manifest that terms "judgment and understanding" were not used as synonymous with learning and wisdom, but with sense of knowledge sufficient to comprehend nature of transaction, and in view of further instruction as to mental capacity necessary to make valid will.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Sound Mind and Memory.]

Appeal from the Supreme Court of the District of Columbia.

Proceedings by Ernest Charles Thomas to probate the last will and testament of Mary Elizabeth Young Thomas, deceased, opposed by Walter Owen Young. Judgment denying probate of will, and proponent appeals. Affirmed.

Guy Mason, W. W. Spalding, and C. R. McAtee, all of Washington, D. C., for appellant.

Elizabeth C. Harris, A. F. Canfield, and W. J. Casey, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

MARTIN, Chief Justice. This is an appeal from an order of the lower court denying probate to a contested will. The instrument in question purported to be the last will and testament of Mary Elizabeth Young Thomas, deceased. The testatrix died seized of an undivided one-half interest in a residence property on Eighteenth street in the District of Columbia, and a small quantity of personal property of doubtful value. Her surviving relatives were her mother, her husband, Ernest Charles Thomas, and her brother, Walter Owen Young. She had no children.

[1] By the terms of the will she devised all her property to her husband; the real estate thus devised was ancestral property, which in the absence of a will would have descended to her surviving brother as her sole heir at law. Section 945, D. C. Code. When the will was presented for probate, her surviving brother as caveator contested it, alleging mental incapacity of the testatrix and undue influence; these charges were both sustained by the verdict of the jury, and the will was denied probate. The caveatee, now appellant, contends that the lower court erred at the trial (a) in not sustaining his motion for a directed verdict at the close of caveator's evidence in chief; (b) in the admission of certain evidence over caveatee's objection; and (c) in the charge to the jury. The motion for a directed verdict was based upon the contention that the caveator had failed to introduce any evidence tending to prove the alleged mental incapacity of the testatrix or the charge of undue influence. The court overruled the motion, and this ruling requires a brief statement of the purport of caveator's evidence in chief.

It was testified in chief that the testatrix was married to the caveatee in the year 1907; that after the marriage they went to live at the Eighteenth street property which at the time was owned by the grandmother of the testatrix; that the house was then occupied as a residence by the testatrix and her husband, together with her grandmother, her mother, and her brother and his family; that later the testatrix and her husband left the Eighteenth street home and lived elsewhere until in January, 1923, when she was taken sick and brought to the Eighteenth street home again, where she remained until the time of her death; that in the year 1912 the grandmother of the testatrix died, leaving the Eighteenth street property by her last

will and testament to testatrix and her brother, share and share alike, without any restrictions; that after the death of the grandmother the house was occupied by the testatrix, her mother, and her brother with his family, and that, beginning soon after the death of the grandmother and continuing until the death of testatrix, frequent conversations concerning the property took place between testatrix and her brother, wherein they agreed that it should be kept and maintained as a home for their mother during her lifetime, and that in event of the death of the testatrix or her brother the property should pass to the survivor and his or her heirs; that in January, 1923, the testatrix was taken with pneumonia which confined her to her bed for eight weeks at the Eighteenth street home; that from and after that time a decided change occurred in both her physical and mental condition; that after she recovered from her illness she did not take up her residence with her husband, but remained at the Eighteenth street home until the time of her death, being cared for by her mother; that in 1925 her condition was such that Dr. Mary S. Lucas was called, and found her suffering from a cancer of the uterus, as a result of which she became emaciated and very weak, and it was necessary to prescribe morphia; that as far back as 1924 the testatrix had become accustomed to the use of morphine; that in May, 1925, an operation was performed which seemed for a short time to benefit her, but that her condition soon became worse; that her weight dropped from 170 pounds to less than 100 pounds, and that her mental condition showed a marked change for the worse; that during this period she was taking morphine tablets in great quantities; and Dr. Lucas testified that in the first half of October, 1925, her condition resulting from toxemia and anemia was bad; that she would suffer from periods of mental excitement and terrible agony until by the use of morphine her mind would be comparatively stupified. On October 9, 1925, her husband took her away in his automobile at 6 o'clock in the morning, and at 2 o'clock he brought her back to the Eighteenth street home, the will being signed on that day; that at this time the mother of the testatrix was still living at the home, and that testatrix said nothing to her or to her brother concerning the making of a will; that testatrix died on the 26th day of February, 1926. It was testified by various witnesses, who knew the testatrix and had been with her at times about the date of the will, that she was then of unsound mind, and the witnesses stated the facts upon which they based their opinions. It was also testified that she had complained that her husband had threatened to choke her if she refused to make a will, and that she declared she "would not make such a will while in her right senses."

[2] We may say without further discussion that in our opinion the evidence in chief was sufficient to go to the jury in support of the caveat. We are not concerned at this time with the weight of the evidence, our province being simply to determine whether there was evidence sufficient to be submitted by the trial court to the jury. Barbour v. Moore, 10 App. D. C. 48; Morgan v. Adams, 29 App. D. C. 198.

[3] We are of the opinion that the evidence concerning the conversations between testatrix and her brother relative to the disposition of the Eighteenth street property was competent as reflecting upon the issue of mental capacity and undue influence at the date of the will. This conclusion is sustained by Throckmorton v. Holt, 180 U. S. 552, 572, 21 S. Ct. 474, 482 (45 L. Ed. 663) wherein it is said:

"In the cases contained in class A, it is held that declarations, either oral or written, made by a testator, either before or after the date of the alleged will, unless made near enough to the time of its execution to become a part of the res gestæ, are not admissible as evidence in favor of or against the validity of the will.

"The exception to the rule as admitted by these cases is that where the issue involves the testamentary capacity of the testator, and also when questions of undue influence over a weakened mind are the subject of inquiry, declarations of the testator made before or after, and yet so near to the time of the execution of the will as to permit of the inference that the same state of mind existed when the will was made, are admissible for the purpose of supporting or disproving the mental capacity of the testator to make a will at the time of the execution of the instrument propounded as such. These declarations are to be admitted, not in any manner as proof of the truth of the statements declared, but only for the purpose of showing thereby what in fact was the mental condition, or, in other words, the mental capacity, of the testator at the time when the instrument in question was executed. * * *"

It is quite apparent therefore that declarations of the deceased are properly received upon the question of his state of mind, whether mentally strong and capable or weak and incapable, and that from all the testimony,

including his declarations, his mental capacity can probably be determined with considerable accuracy.

The requirement that the declarations of the decedent must be near to the time of the execution of the will is satisfied in the present case by testimony to the effect that the declarations were repeated at various times from the year 1912 up to the date of the will.

[4] We have examined the charge of the court, and are satisfied that the instructions given to the jury were full and correct. The court charged, among other things, "that evidence of any use of opiates or drugs by the testatrix creates no presumption of lack of testamentary capacity, or of undue influence by any person, at the time of making her will, unless a preponderance of evidence shows testatrix was under the influence of said opiates or drugs at the time when said will was made, to the extent that testatrix was not of sound mind and disposing memory."

The court also charged "as a matter of law that the expression 'sound and disposing mind capable of exercising a valid deed or contract,' when used with respect to an attempt to dispose of property by a last will and testament, means that the decedent must have had, at the time of the execution of the instrument, sufficient mental capacity to dispose of her property or estate with judgment and understanding, considering the nature and character of the estate as well as the relative claims of the different persons, who would be the natural objects of her bounty. * * * *"

The appellant contends that it was error for the court to instruct the jury that a sound and disposing mind implied the ability to dispose of property by will with "judgment and understanding." We think that this instruc-

tion was not erroneous, for it is manifest that the terms "judgment and understanding" were not used as synonymous with learning and wisdom, but with the sense of knowledge sufficient to comprehend the nature of the transaction.

In Berry v. Safe Deposit Co., 96 Md. 45, 49, 53 A. 720, 721, the court said: "Now, what is the degree of mental capacity which the law requires in such a case? * * * By the legal standard he who is possessed of sufficient capacity at the time of executing his will to make a disposition of his estate with judgment and understanding in reference to the amount and situation of his property and the relative claims of the different persons who should have been the objects of his bounty, is mentally competent to make a valid will."

Moreover the trial justice also instructed the jury as follows: "To make a valid will it is not necessary that the testatrix should be endowed with a high order of intellect, measuring up to the ordinary standard of mankind; nor is it necessary to the making of a valid will that the party should have a perfect memory, and that her mind should be wholly unimpaired by age, sickness, or other infirmities. If the party possesses memory and mind enough to know what property she owns and desires to dispose of, and the person or persons to whom she intends to give it, and the manner in which she wishes it applied by such person, and, generally, fully understands her purpose and the business she is engaged in, in so disposing of her property, she is, in contemplation of law, of sound and disposing mind."

In our opinion the record does not disclose error to the prejudice of appellant; the judgment below is therefore affirmed, with costs.