## McCARTNEY et al. v. HOLMQUIST.
### No. 7239.

United States Court of Appeals for the District of Columbia.

Decided June 30, 1939.

Joseph C. Nunnally and Thomas A. Farrell, both of Washington, D. C., for appellants.

William E. Leahy and James F. Reilly, both of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and STEPHENS and EDGERTON, Associate Justices

STEPHENS, Associate Justice.

This is an appeal from an order of the District Court of the United States for the District of Columbia denying the probate of a codicil to a will.

Addie M. Taylor (hereinafter referred to as Mrs. Taylor) made a will on July 12, 1932, and another, which superseded the first, on June 20, 1934; on August 26, 1936, she executed the codicil in question. She died on December 9 of the same year, aged 73. The challenge to the validity of the codicil, which alone of the above-mentioned instruments was attacked, was by the appellee, Dorothy Taylor Holmquist (hereinafter referred to as Mrs. Holmquist) who was an adopted daughter of Mrs. Taylor. Mrs. Holmquist filed a caveat charging testamentary incapacity, and the exercise of undue influence by the appellant, Dorothy O. Grant (hereinafter referred to as Mrs. Grant) who was a half-sister of Mrs. Taylor, and by one Alice B. Winner, a nurse who attended Mrs. Taylor during her last illness. Mrs. Holmquist was a residuary legatee under both of the wills above referred to. The codicil cut her off and put in her place Mrs. Grant, Madison McCartney, a brother of Mrs. Taylor, and George Oliver, a half-brother. Aligned as caveatees were the Liberty National Bank, as the executor nominated in the will, Mrs. Grant, Madison McCartney, George Oliver and Taylor Fair.[1]

---

[1] No fraud or undue influence was charged against any of the caveatees except Mrs. Grant.

Taylor Fair was a minor child of Mrs. Holmquist. Under the will of 1934, he was the beneficiary of a trust, the pro-

Upon the caveat and an answer filed thereto, four issues were framed: Was the paper writing of August 26, 1936, a valid codicil; was Mrs. Taylor at the time of executing the codicil of sound and disposing mind; was the codicil properly executed, declared and witnessed; was it procured by the fraud, coercion, deceit, trickery, misrepresentation, falsehoods, undue influence and pretensions of Dorothy Grant and Alice B. Winner or either of them or any other person or persons? The first two questions were answered in the negative, the third and fourth in the affirmative. The answer to the third was directed by the court. Probate of the codicil was accordingly denied. By various assignments, the appellants, Madison McCartney, George Oliver and Mrs. Grant, raised and here urge the following as errors:[2]

■ 1. At the trial the caveatees moved for a directed verdict upon each of the issues. This motion was denied. In respect of the issue of testamentary capacity, it is urged that there was not sufficient evidence to warrant submitting the question to the jury. The argument of the appellants upon this point consists largely of a review and emphasis of the evidence introduced by the caveatees to prove that Mrs. Taylor was of sound and disposing mind and memory. But if there was substantial evidence to the contrary, the trial judge was bound to submit the issue to the jury. We have no power to weigh the evidence. On the duty of Federal courts on motions for directed verdicts see Gunning v. Cooley, 1930, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720; Speirs v. District of Columbia, 1936, 66 App.D.C. 194, 85 F.2d 693; Schwartzman v. Lloyd, 1936, 65 App.D.C. 216, 82 F.2d 822.

■■ We have read the record with care and we conclude that there was substantial evidence tending to prove that Mrs. Taylor lacked testamentary capacity when she executed the codicil. Suffice it to mention that there was evidence that: For a period of several weeks prior to the date of the execution of the codicil, Mrs. Taylor was extremely ill. She had a variety of complications including general arterio-sclerosis, cancer of the pancreas, hardening of the liver and kidneys, gallstones, and enlargement of the heart; she was in great pain and in consequence was given frequent and large doses of both hypnotic and narcotic drugs; she was drowsy and extremely weak. Within two or three days after the execution of the codicil and at other times before execution, her conversation was muddled and rambling. One physician testified that Mrs. Taylor was not in a mental condition to make a will or do any business at the time that he saw her, this because of the wandering condition of her mind. While the evidence was not entirely clear as to the date when he saw her, we think it sufficiently proved the observation to have been close enough to August 26, 1936, to make the condition described relevant. Enfeebled physical condition may be considered evidence of testamentary incapacity. Loving's Administrator v. Williamson, 1938, 274 Ky. 571, 119 S.W.2d 651; Bradshaw v. Brown, Tex.Civ.App.1920, 218 S.W. 1071; Estate of Doolittle, 1908, 153 Cal. 29, 94 P. 240.

■ 2. Upon the issue of fraud and undue influence, it is also contended by the appellants that there was no case for the jury. But upon this issue there was again a conflict in the evidence, and a careful review of that introduced on behalf of the caveator convinces us that it substantially supports the charge and was, therefore, correctly submitted to the jury. Evidence was introduced tending to prove the following: There had been for many years an affectionate relationship between Mrs. Holmquist and Mrs. Taylor. Mrs. Taylor had purchased a home in California for her daughter, and had there visited her on a number of occasions in the winter time. Early in July, 1936, Mrs. Holmquist came to Washington because of Mrs. Taylor's illness, staying with her, and helping to care for her, until July 29. During this period, Mrs. Taylor directed that Mrs. Holmquist be given access to her safe deposit box in the Liberty National Bank; also Mrs. Taylor expressed her intention, upon her recovery, of going to California again to visit Mrs. Holmquist. On July 29, Mrs. Holmquist returned to California to care for her children there, Mrs. Taylor herself indicating that she regarded this as Mrs.

vision for which was affected by the codicil only in that the latter made the continued operation of the provision contingent upon a change of the name Taylor Fair to Grant Taylor.

[2] The Liberty National Bank did not appeal.

Holmquist's duty. It had been for a long time the expressed intention of Mrs. Taylor to leave her property to Mrs. Holmquist.

Between the date of the departure of Mrs. Holmquist for California and August 26 following, when the codicil was executed, there occurred a distinct change of attitude on the part of Mrs. Taylor toward Mrs. Holmquist, a change from the one of affection and confidence above described to one of suspicion and hostility. During this period, Mrs. Taylor was in the constant care of the nurse Winner; and Dorothy Grant had continued access to Mrs. Taylor by virtue of the fact that she spent her nights at Mrs. Taylor's apartment and spelled the nurse in caring for her. In the latter part of August, the nurse told a friend of Mrs. Taylor's that she, the nurse, had accomplished the impossible, that the men from the Bank had just left and that Mrs. Taylor had just changed her will and disinherited her daughter. The nurse said, "I have fixed that bitch's business." Upon inquiry as to how she had accomplished this, the nurse stated that "little by little she had told Mrs. Taylor that her daughter had not gone home to her children, but she had gone home to buy or change her house for a newer house, buy an automobile and go on a vacation." She further stated that she could talk to Mrs. Taylor about Mrs. Holmquist when Mrs. Taylor did not permit her own brother to do so. She said also that she had prepared all the notes for the will and, "Believe me when I write them, they are legal." The notes for the contents of the codicil were in the handwriting of the nurse. On the evening of the day preceding the drafting of the codicil, the nurse, Dorothy Grant, Madison McCartney and George Oliver were all present in Mrs. Taylor's apartment. After the execution of the codicil, the Bank sent to Mrs. Holmquist a notice of the change brought about in the disposition of Mrs. Taylor's property, and Mrs. Holmquist immediately returned to Washington. When she went to the apartment of Mrs. Taylor, she was forbidden by the nurse to enter and she never saw Mrs. Taylor until after she died. Through her lawyer, Mrs. Holmquist made inquiry of the physician in charge of Mrs. Taylor as to why she, Mrs. Holmquist, could not see her mother. The doctor replied briefly that visitors were detrimental to Mrs. Taylor's welfare and particularly Mrs. Holmquist, "about whom

my patient has evidently changed her opinion"; and Mrs. Holmquist's attorney received the following:

"9/9/36

"Mr. William E. Leahy,

"Investment Building, Washington, D. C.

"Dear Sir: Please do not annoy my physician, Dr. Boyd Read, any further about my foster daughter, Mrs. Dorothy Holmquist visiting my home.

"She has been a source of trouble and enormous expense to me for many years. Her trip here during the early part of my illness during which there was nothing but her usual whining for money, convinced me that all she has cared for me was my money, and that she was not interested in my health or my recovery.

"On this visit she chiseled out of me nearly six hundred dollars. I have practically taken care of her son by her first husband, all of his life, including doctors and hospital bills.

"I know this recent visit was not because she was interested in me. The letter I told the bank to mail her was the cause and when she found out I did not want her in my home, her first thought was to rush to the bank. That is her only interest and well have I learned it.

"I have given and paid out thousands of dollars on her and her two husbands and I do not intend that they shall waste any more of the money Grant Taylor and myself worked so hard to get. It took many years and this serious spell of sickness for me to wake up.

"Among other things, I purchased her a home in Long Beach, California, and furnished it and now she calls it junk.

"Very truly yours,—William V. Simmons, Trust Officer."

This letter was apparently dictated by Mrs. Taylor under the suggestion of the nurse and Dorothy Grant, and signed for Mrs. Taylor by the trust officer. Mrs. Holmquist was not notified by the family of Mrs. Taylor's death.

Questions of credibility are, of course, for the jury. If the jury believed the foregoing it could hardly reach any conclusion but that the codicil had been executed as a result of fraud practiced upon Mrs. Taylor.

3. Complaint is made of the refusal of the trial judge to give to the jury cer-

tain requested prayers for instructions. These we have examined and compared with the charge given by the court. It would serve no useful purpose to set out the requests and charge in terms. It is elementary that where a charge given fully informs the jury as to the law, it is not error to refuse requested instructions to the same effect. Capital Traction Co. v. Lyon, 1928, 57 App.D.C. 396, 24 .F.2d 262; Nunan v. Timberlake, 1936, 66 App.D.C. 150, 85 F.2d 407; Pistorio v. Washington Railway & Electric Co., 1917, 46 App.D.C. 479. No error was assigned to the charge as given; and defects now asserted to exist therein were not pointed out to the trial court. We think that the charge given adequately covered the requests refused.

4. The appellants urge finally that the trial court erroneously refused to permit Mrs. Taylor's attending physician to testify that she was, on October 10, of clear mind and capable of executing a valid deed or will. Objection to such proffered testimony was made by the caveator upon the ground that it was forbidden admission by the local statute providing that no physician shall be permitted, without the consent of the person afflicted or his legal representative, to disclose confidential information acquired in attending a patient in a professional capacity. 31 Stat. 1358, D. C.Code (1929) tit. 9, § 20. The physician had been called, however, by the caveatees, one of whom was the nominated executor, the Liberty National Bank. The contention of the appellants is that this operated to waive the privilege.

We ruled in Thompson v. Smith, 1939, 70 App.D.C. 65, 103 F.2d 936, that the phrase "legal representative" as used in the statute has an accepted meaning which includes "executor," and in that case we supported waiver by the executor of the statutory privilege. But there letters testamentary had been issued to the executor. In Hutchins v. Hutchins, 1919, 48 App.D.C. 495, and in Labofish v. Berman, 1932, 60 App.D.C. 397, 55 F.2d 1022, we ruled that executors who, for lack of admission of the will to probate and issuance of letters, are such merely eo nomine, rather than de jure, have no authority to waive the privilege. In the instant case, letters had not been issued to the Liberty National Bank. Its claimed waiver was, therefore, inoperative.

Affirmed.