## MacMILLAN v. KNOST.
### No. 7828.

United States Court of Appeals for the District of Columbia.

Argued Jan. 6, 1942.

Decided March 9, 1942.

GRONER, C. J., dissenting.

———◇———

Mrs. Mabel Walker Willebrandt and Mr. William Montgomery Smith, with whom Mr. John J. Sirica, all of Washington, D. C., was on the brief, for appellant. Mr. John R. Jacobs, Jr., of Washington, D. C., also entered an appearance for appellant.

Mr. Leslie C. Garnett, with whom Mr. Samuel F. Beach, both of Washington, D. C., was on the brief, for appellee. Mr. Karl Kindleberger, of Washington, D. C., also entered an appearance for appellee.

Before GRONER, Chief Justice, and MILLER and EDGERTON, Associate Justices.

EDGERTON, Associate Justice.

This appeal is from an order which refused probate to the will of Nellie E. Cameron of this District. A jury found that the will was obtained by undue influence. The question is whether the evidence supports that verdict.

The testatrix was a widow 76 years old. The will left her entire estate to appellant, a man about half her age, who was a grand-nephew of her late husband. Appellee is her niece, and had been a beneficiary under previous wills.

Appellant lived in California. During occasional visits here, he was kind and attentive to the testatrix. He often took her out to dinner. He also took her on long automobile trips, including one to California shortly before she made the will. She was fond of him, enjoyed his society, preferred him to her blood relations, and came to depend on his affection. She usually signed letters to him "Sincerely, Aunt Nellie." She sometimes made doting references to him; e. g., she once said to a visitor, "Miss Hammerly, I never was so hurt in my life as when you and Donald [appellant] went out the door together." Miss Hammerly testified that the testatrix then "sprang at" and frightened her. In October, 1937, just before the testatrix drove to California with appellant, she told her lawyer that she did not want to carry $5,000 in cash, and was afraid appellant would get it away from her if she did so. She went over her then existing will with the lawyer, and said that appellant had asked her to change it so as to make him sole beneficiary but she would never change it.

Soon after the testatrix and appellant reached California she told his brother, a doctor, that she wished to make a will. This doctor drew up the will in his office. The testatrix executed it then and there, and the doctor witnessed it. The only other person present was a woman not connected with the parties. The testatrix walked, alone, into and out of the doctor's office. Her mental competence is not disputed. There is no evidence that the will was not in accordance with her wishes when, and after, she made it.[1] She died two months later.

■ Counsel for appellee say that appellant carried on a "campaign to secure for himself the estate of this aged widow." Fortunately for aged widows, though sometimes unfortunately for their next of kin, the law does not penalize such campaigns. If appellant hoped to be, asked to be, and was, rewarded for his kindness, it does not follow that he used undue influence. As the court told the jury, undue influence involves "improper means and practices * * *. Influence gained by kindness and affection will not be regarded as 'undue', if no imposition or fraud be practiced, even though it induce the testator to make an unequal * * * disposition of his property in favor of those who have contributed to his comfort, * * * if such disposition is voluntarily made. Confidential relations existing between the testator and beneficiary do not alone furnish any presumption of undue influence. * * * One has the right to influence another to make a will in his favor. He may * * * lay his claims for preferment before the testator. They may be based on kinship or friendship or kindness or service or need or any other sentimental or material consideration. One can use argument and persuasion so long as it is fair and honest and does not go to an oppressive degree where it becomes coercive. * * * " These instructions state the law of the District of Columbia. Moreover, "possibility or suspicion of undue influence" is not enough.[2]

■ We find no evidence of oppression or coercion. We find no evidence of improper conduct, as we interpret that term. Appellant's conduct may arouse distaste in reasonable men. Reasonable men, measuring his conduct by their individual standards, may even call it improper. The jury, in effect, have done so. But the evidence would not support a finding that appellant's conduct was improper according to commonly accepted standards. That, we think, is the test. In legal theory, the rights of litigants do not turn upon the predilections of a jury, and so upon accidental differences between one jury and another. For example, when negligence is in issue the law undertakes to measure conduct by the normal standards of normal men—the so-called "reasonable man" or "ordinary prudent man"—and not by the higher or lower standards of the men who try the issue.[3] On the same principle, conduct which influences a will is not improper, and the influence is not undue, unless it falls below commonly accepted standards.

Reversed.

GRONER, C. J., is of opinion there was evidence to support the verdict and is therefore for affirmance.

[1] Cf. Hagerty v. Olmstead, 39 App.D.C. 170.

[2] Beyer v. LeFevre, 186 U.S. 114, 120, 22 S.Ct. 765, 46 L.Ed. 1080; Brooke v. Barnes, 61 App.D.C. 161, 58 F.2d 887.

[3] In another field, cf. United States v. One Book Called "Ulysses", D.C., 5 F.Supp. 182, 184.