**DUCKETT et al. v. DUCKETT.**
No. 8222.

United States Court of Appeals for the
District of Columbia.
Submitted Jan. 6, 1943.
Decided March 15, 1943.

Mr. William C. Murphy, of Washington, D. C., with whom Mr. Leonard A. Block, of Washington, D. C., was on the brief, submitted the case on the brief for appellants.

Mr. Thurman L. Dodson, of Washington, D. C., submitted the case on the brief for appellee.

Before GRONER, Chief Justice, and VINSON and EDGERTON, Associate Justices.

EDGERTON, Associate Justice.

This is an appeal from a decree of the District Court which admitted to probate the will of Mary Frances Diggs. Appellants, a brother and two nephews of the testatrix, opposed probate on various grounds including attestation, testamentary capacity, fraud and undue influence. Appellee is a sister of the testatrix, and is named in the will as executrix and sole beneficiary. The case was tried to a jury. The court directed a verdict for appellee on all issues except testamentary capacity and attestation, and the jury found for appellee on those issues.

Testatrix died at the age of about 60, after an illness of five weeks. The testimony was in conflict. The evidence favorable to appellants on the issues of fraud and undue influence was to this effect. Appellee, a graduate nurse who lived in Philadelphia, came to Washington when testatrix had been in a hospital three weeks and took her home, although she had not asked to be taken home and two doctors advised against it. Appellee had not previously attended testatrix or done anything for her. Appellee took complete charge of her, repeatedly prevented other near relatives from seeing her, and told them that she did so under doctors' orders. That statement was false. Appellant Ward Duckett, a brother of testatrix, who had made his home with her for thirty-six years, was not allowed to see her unless appellee was present, but a cousin, Cecelia Walker, who was a close friend of appellee, was allowed to go into the room at will, and other friends of testatrix were also admitted. She was in a very weak physical condition. Sometimes she could recognize people only by their voices, and could not sit up or carry on a conversation. Various members of the family tried in vain to see her. Her sister Mary stayed at the house and did all the cooking.

On April 25, 1941, after "very secretive conversations" between Cecilia Walker and appellee, Cecilia Walker telephoned for a lawyer to come and prepare a will. Although there was a telephone in the house, she went to her own home to make this call. The will was executed the same day. It left everything to appellee, "in consideration of her kindness, untiring devotion and personal service to me during my illness, when no other relative offered or came to do for me, and without hope of reward. * * *" There was no evidence that the testatrix had previously felt resentment or ill-will toward any of her relatives. Cecilia Walker and the lawyer witnessed the will. Testatrix died the next day.

■■■ A jury might reasonably decide that appellee, after taking sole charge of testatrix, first made false statements to other relatives with the purpose and effect of inducing them not to visit her and then allowed her to suppose, contrary to the fact, that they were making no efforts to see her, doing nothing for her, and showing no interest in her welfare. In our opinion such conduct would constitute both fraud and undue influence.[1] Moreover, a jury might properly decide that this conduct was intended to produce and did produce in testatrix the hostility toward these relatives which she expressed in her will. "It is not necessary that there be direct proof of fraud or undue influence."[2] "Undue influence * * * is nearly always a matter of inference * * *".[3]

■■■ The court excluded testimony of appellant Ward Duckett that the testatrix had repeatedly agreed, or promised in the presence of others, to leave him her real estate if he remained single and continued to live with her. Since this testimony tended to show a previous intention inconsistent with the will, it was competent on the issues of undue influence and testamentary capacity[4] unless it was covered by the statute which provides that "If one of the original parties to a transaction or contract has, since the date thereof, died * * * the other party thereto shall not be allowed to testify [to any declaration of the deceased in a suit against] the executors, administrators, trustees, heirs, devisees, assignees, committee, or other per-

---

[1] Barbour v. Moore, 4 App.D.C. 535, 551. Cf. McCartney v. Holmquist, 70 App.D.C. 334, 106 F.2d 855, 126 A.L.R. 375; Prudential Ins. Co. v. Saxe (Saxe v. Saxe), U.S.App.D.C., 134 F.2d 16.

[2] Hagerty v. Olmstead, 39 App.D.C. 170, 175.

[3] Barbour v. Moore, 10 App.D.C. 30, 46.

[4] Throckmorton v. Holt, 180 U.S. 552, 572–574, 21 S.Ct. 474, 45 L.Ed. 663; Thomas v. Young, 57 App.D.C. 282, 283, 22 F.2d 588.

son legally representing the deceased * * *."[5] We need not decide whether the alleged promises of the testatrix were a "transaction or contract" within the meaning of the statute. The statute seeks to protect only persons "legally representing the deceased" against claims which may be fraudulent. It does not seek to prevent anyone from showing who does or does not legally represent the deceased. To permit the persons named as executors and legatees in an alleged will to utilize the statute in order to probate the will would protect claims which might themselves be based on fraud or undue influence. The statute should not be given so broad a construction.[6] We think the evidence should have been admitted.

We think it was error to direct a verdict in appellee's favor on the issues of fraud and undue influence. Since the excluded evidence goes also to the issue of testamentary capacity, a new trial must be had on that issue also.

Reversed.

---

[5] D.C.Code 1940, § 14—302.

[6] This is the prevailing view. 115 A.L. R. 1425 ff. Cf. 2 Wigmore, Evidence (3d Ed.) § 578.