### In re ESTATE of Paul Latimer WEIR, Deceased.

### Margaret Partee WEIHS, Appellant,

### v.

### Elizabeth HOLMEAD.

### No. 72-1444.

United States Court of Appeals, District of Columbia Circuit.

March 8, 1973.

Earl H. Davis, Washington, D. C., was on the brief for appellant.

Mark P. Friedlander, Jr., Washington, D. C., was on the brief for appellee.

Before McGOWAN, MacKINNON* and WILKEY, Circuit Judges.

* Judge MacKinnon did not participate in the consideration or decision of this case.

**PER CURIAM:**

This case involves a challenge to a will executed by the caveator's uncle on June 6, 1966, which named an 80-year old woman, the caveatee and appellee herein, as principal beneficiary under the will. Testator, Paul Weir, was a lifelong bachelor who was predeceased by a sister who had no children and a brother who left two surviving children, a son and a daughter, Margaret Weihs, the caveator and appellant herein. Mr. Weir, an engineer, met Elizabeth Holmead, a widow of approximately the same age, shortly after World War II, and they became close friends until Mr. Weir's death on February 19, 1971. Although they had separate apartments, they shared each other's company, traveled together, and took their meals together; in short, they became constant companions until testator's death.

On February 9, 1956, Mr. Weir executed a will which left a life estate to Mrs. Holmead and the remainder to his brother, or if he be not living, to his brother's heirs. In 1965, Mr. Weir's brother died. Then, on June 6, 1966, Mr. Weir executed a new will which left $10,000 each to his nephew and niece, the caveator, and the remainder of his estate to Mrs. Holmead. Upon testator's death in 1971, the niece filed a caveat challenging the 1966 will, claiming lack of due execution, lack of testamentary capacity, undue influence by Mrs. Holmead and others, and fraud and deceit.

The District Court, at the conclusion of caveator's evidence, directed a verdict for the caveatee on all issues, finding that there was no evidence upon which a reasonable juror could have found for the caveator. Caveator has appealed, and for the reasons stated below, we affirm the District Court's decision.[1]

Appellee contends that the District Court erred in directing a verdict in this case. A review of the District Court record convinces us otherwise. The contentions of lack of due execution and fraud and deceit were completely unsupported in District Court and are not pressed upon appeal.[2]

The evidence introduced as to lack of testamentary capacity was that the testator dressed conservatively, was occasionally forgetful, sometimes untidy (he left his socks on the floor), and had some strange habits such as picking up dust from the floor and inspecting it.[3] For example, Mrs. Lay, a retired nurse, who lived in an adjoining apartment and had prepared some meals for testator, testified that she believed testator lacked testamentary capacity at the time of the execution of the 1966 will.[4] Upon cross-examination, it became clear that the only basis for this conclusion was the fact that testator sometimes picked up dust and wore torn trousers, and her feeling that she "couldn't understand why he wouldn't want to" leave his entire estate to his blood relatives.[5] Mr.

1. On February 5, 1973, acting on appellee's motion to advance this appeal for hearing on the summary calendar, we ordered, under Rule 11(e) of the General Rules of this court, that this case be considered and decided without oral argument.

2. Two of the three attesting witnesses testified as to the due execution of the will, the absence of the third witness being satisfactorily explained. Joint Appendix (J. A.) 134a–158(a). A will is valid in the District of Columbia if it is in writing and signed by the testator and attested and subscribed in the presence of the testator by at least two credible witnesses. D.C. Code § 18–103. As to the claim of fraud and deceit, both the caveator and nephew testified that they knew of not one false statement made by Mrs. Holmead to testator to influence the making of the will. J.A. 195a, 129a. There was absolutely no evidence presented by appellee establishing fraud or deceit.

3. Rather than establishing testamentary incapacity, caveator's evidence only indicated that testator, like most of us, had some peculiarities that marked him as an individual.

4. J.A. 56a.

5. J.A. 60a. It should be noted that the fact that testator has made a so-called "unnatural disposition" is not, in and of itself, an indication of incapacity. See, e. g., Morgan v. Morgan, 30 App.D.C. 436, 449 (1908).

Lauten, a trust officer of National Savings & Trust Company, executor of the first (1956) will, testified that he believed testator didn't have all his "faculties" at the time of the making of the 1966 will.[6] Mr. Lauten testified that he somehow got the impression that testator was unsatisfied with the 1966 will, but could give no basis for this hunch, or for his bare assertion that the testator didn't have all his "faculties."[7] Caveator testified that she believed testator lacked testamentary capacity because her middle name was misspelled in the 1966 will and she didn't believe that her uncle would have signed anything with that name misspelled since it was a family name that was very important to him.[8] Also introduced into evidence was a letter from the caveator to testator, received in 1966, which was stamped "Received May 21, 1963, P. L. Weir." The letter was initialed by testator. This was the substance of caveator's evidence on testamentary capacity.

Although caveator's evidence perhaps presented interesting tidbits, the District Court was correct in concluding that there was not enough evidence to go to the jury on the issue of testamentary capacity. In order to make a valid will, testator must be "of sound and disposing mind and capable of executing a valid deed or contract."[9] In this jurisdiction, as in most others, sound and disposing mind simply means that "the decedent must have had, at the time of execution of the instrument, sufficient mental capacity to dispose of his property or estate with judgment and understanding, considering the nature and character of the estate as well as the relative claims of different persons, who would be the natural objects of [his] bounty."[10] In cases where testamentary incapacity has been found there has been a considerably stronger showing that testator lacked a sound and disposing mind. For instance, evidence that testator was extremely ill or under heavy sedation at the time of the execution of the will has been sufficient to allow the issue of testamentary capacity to go to the jury.[11] We have discovered no case, and appellant cites none, where the issue of testamentary capacity was allowed to go to the jury on such speculative and meaningless testimony as was presented below. There was simply no evidence introduced by caveator that would have permitted a jury to conclude that testator did not understand precise-

6. J.A. 210a.

7. J.A. 212a.

8. J.A. 197a.

9. D.C.Code § 18–102.

10. Thomas v. Young, 57 App.D.C. 282, 284, 22 F.2d 588, 590 (1928). See also Thompson v. Smith, 70 App.D.C. 65, 73, 103 F.2d 936, 944 (1939), where this court stated:

> To make a valid will it is not necessary that the testator should be endowed with a high order of intellect, or even an intellect measuring up to the ordinary standards of mankind. Nor is it necessary to the making of a valid will that the party should have a perfect memory, and that his mind should be wholly unimpaired by age, sickness or other infirmities. If the party possess memory and mind enough to know what property he owns and desires to dispose of, and the person or persons to whom he intends to give it, and the manner in which he wishes it applied by such person, and generally, fully understands his purposes and the business he is engaged in, in so disposing of his property, he is, in contemplation of law, of sound and disposing mind.

See also 1 Page on Wills, § 12.21 (3rd ed. 1959).

11. See, e. g., McCartney v. Holmquist, 70 App.D.C. 334, 335, 106 F.2d 855, 856 (1939) ; Thomas v. Young, 57 App.D.C. 282, 283, 22 F.2d 588, 589 (1928). In Labofish v. Berman, 60 App.D.C. 397, 398, 55 F.2d 1022, 1023 (1932), this court held there was sufficient evidence to go to the jury where testator, in addition to being in poor health, subject to fainting attacks, irritable, and unable to properly attend to business, frequently accused his mother and wife of robbing him and his children of trying to poison him. And he "curs[ed] his mother on her deathbed and at her funeral, and, during her burial, threatening to kill himself." Id. This type of evidence is in stark contrast to that presented in this case.

ly what he was doing when he executed the contested will.[12]

■ Similarly, the evidence presented as to undue influence was insufficient to allow the jury to take that issue. All the witnesses testified without qualification that testator and Mrs. Holmead had great affection for each other, and that with the exception of Mrs. Holmead, testator had no close friends. He saw his niece and nephew very infrequently,[13] and only rarely spoke with them on the phone.[14] Although testator's nephew testified that he believed Mrs. Holmead exercised a "wifely" influence on his uncle,[15] neither nephew or niece could recite anything in particular that Mrs. Holmead ever did or said to unduly influence their uncle.[16]

■ Unfortunately for the caveator, influence gained by years of mutual affection is not sufficient in law to establish undue influence. Undue influence is influence gained by improper means. As this court stated in Mac-Millan v. Knost, 75 U.S.App.D.C. 261, 262, 126 F.2d 235, 236, cert. denied, 317 U.S. 641, 63 S.Ct. 32, 87 L.Ed. 516 (1942):

Influence gained by kindness and affection will not be regarded as "undue," if no imposition or fraud be practiced, even though it induces the testator to make an unequal * * * disposition of his property in favor of those who have contributed to his comfort, * * * if such disposition is voluntarily made. Confidential relations existing between the testator and beneficiary do not alone furnish any presumption of undue influence.

* * * One has the right to influence another to make a will in his favor. He may * * * lay his claims for preferment before the testator. They may be based on kinship or friendship or kindness or service or need or any other sentimental or material consideration. One can use argument and persuasion so long as it is fair and honest and does not go to an oppressive degree where it becomes coercive.

The court then added that the "possibility or suspicion of undue influence is not enough." [17]

In rejecting a contention that undue influence was exerted by testatrix's daughter, this court, in Brooke v. Barnes, 61 App.D.C. 161, 163, 58 F.2d 887, 889 (1932), stated:

It is no ground of criticism that others might have made a different will. . . . It will be remembered that it is not influence, but undue influence, that is charged, and is necessary to overthrow a will.[18]

The court emphasized that the fact one requests the testator to make a will a particular way does not establish undue influence.[19]

The cases cited by appellant are completely inapposite, and the distinguishing facts of each one only serve to illustrate the lack of any evidence of undue influence in this case. Where the issue of undue influence had been permitted to go to the jury in the cases cited by appellant, there had been testimony which strongly indicated that the testator was peculiarly in a position to be coercively influenced. For example, the testatrix was extremely ill and prevent-

12. There is, of course, a presumption in favor of testamentary capacity. See, e. g., Morgan v. Adams, 29 App.D.C. 198, 206 (1907).

13. J.A. 116a, 196a.

14. J.A. 187a, 196a.

15. J.A. 130a.

16. J.A. 129a, 197a.

17. 75 U.S.App.D.C. at 262, 126 F.2d at 236. See Beyer v. LeFevre, 186 U.S. 114, 126, 22 S.Ct. 765, 46 L.Ed. 1080 (1902).

18. The court was quoting from Beyer v. LeFevre, 186 U.S. 114, 122–124, 22 S.Ct. 765, 46 L.Ed. 1080 (1902).

19. 61 U.S.App.D.C. at 163, 58 F.2d at 889. In this case there was not even any testimony that Mrs. Holmead ever requested testator to dispose of his estate in a particular way.

ed, by false representations of a nurse, from seeing her relatives,[20] or the testatrix was subject to threats of physical abuse while under sedation to compel her to execute a will.[21] In contrast, there was absolutely no testimony in this case indicating any coercion exercised by Mrs. Holmead, or anyone else. If the caveatee exercised any influence whatsoever over testator, it was the influence that arises from genuine mutual affection. And, as noted above, "influence gained by kindness and affection" is not regarded as undue.[22]

If the long-standing salutary policy of our law favoring free and untrammeled disposition of one's property means anything,[23] it means that the District Court would have erred in allowing this case to go to the jury. Only through sheer speculation could the jury have found lack of testamentary capacity or undue influence.

Affirmed.

---

20. Duckett v. Duckett, 77 U.S.App.D.C. 303, 134 F.2d 527 (1943) ; McCartney v. Holmquist, 70 App.D.C. 334, 106 F.2d 855 (1939).

21. Thomas v. Young, 57 App.D.C. 282, 22 F.2d 588 (1927).

22. MacMillan v. Knost, 75 U.S.App.D.C. at 262, 126 F.2d at 236.

23. *See, e. g.,* Simmons v. Pinney, 126 U.S. App.D.C. 184, 185, 375 F.2d 929, 930 (1967) ; Barbour v. Moore, 4 App.D.C. 535, 547 (1894).