**METROPOLITAN LIFE INSURANCE COMPANY, Plaintiff,**

v.

**Keith E. HALL, Edward M. Dell and Robert T. Griner, Defendants.**

**No. CIV. AMD 97–326.**

United States District Court,
D. Maryland.

June 24, 1998.

John Snowden Stanley, Jr., Semmes, Bowen & Semmes, Baltimore, MD, for plaintiff.

Thomas J. Dolina, Bodie, Nagle, Dolina, Smith & Hobbs, P.A., Towson, MD, Edward M. Dell (Pro se), Bridgeville, PA, Robert T. Griner (Pro se), Plainfield, NJ, for defendants.

## MEMORANDUM

DAVIS, District Judge.

This is an interpleader action brought by Metropolitan Life Insurance Company ("MetLife") to avoid multiple liability under the life insurance policy issued to decedent Jacqueline Miller ("Miller"). Defendants Keith E. Hall and Robert T. Griner, Miller's widower and former spouse, respectively, claim to be the rightful beneficiary under the policy. Defendant Edward M. Dell ("Dell") is Miller's father and the contingent beneficiary of the policy. The Court has jurisdiction by virtue of minimum diversity of citizenship, as well as complete diversity, between and among MetLife and the defendants.[1] 28 U.S.C. §§ 1332, 1335; FED .R. CIV. P. 22. Moreover, because the issues in this lawsuit are governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq., federal question jurisdiction also exists under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1). The proceeds of the policy have been deposited by MetLife into the registry of the court, and MetLife is no longer a party to the litigation.

Pending before this Court are Hall's Motion for Summary Judgment, Dell's opposition, and Griner's Cross–Motion for Summary Judgment.[2] No hearing is necessary. For the reasons set forth herein, Hall's motion shall be granted, Griner's motion denied and judgment entered awarding the proceeds of the policy to Hall.

(i)

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material for purposes of summary judgment if, when applied to the substantive law, it affects the outcome of the litigation. *Id.* at 248, 106 S.Ct. 2505. A party opposing a properly supported motion for summary judgment bears the burden of establishing the existence of a genuine issue of material fact. *Id.* at 248–49, 106 S.Ct. 2505. The opposing party's "response, by affidavit or as otherwise provided in [Rule 56] must set forth specific facts showing that there is a genuine issue for trial." FED. R.CIV.P. 56(e). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. "The mere existence of a scintilla of evidence" will not support this finding. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. Summary judgment must be entered against a non-moving party who "fails to make a

---

1. MetLife is organized under the laws of New York State and has its principal place of business in New York. Defendant Hall is a resident of Maryland. Defendant Dell is a resident of Pennsylvania. Defendant Griner is a resident of New Jersey.

2. Also pending is Hall's Motion to Strike the affidavits of Mary Dell, Jeanne Winschel, Dell and Griner as hearsay. *See McSpadden v. Mullins*, 456 F.2d 428, 430 (8th Cir.1972) ("Affidavits in support of summary judgment must be made on personal knowledge and contain admissible evidence ... Where an affidavit does not meet this standard, it is subject to a motion to

strike."); *Hicks v. Brysch*, 989 F.Supp. 797, 810 (W.D.Tex.1997)("Unsworn pleadings do not satisfy Rule 56(e)'s requirements for summary judgment proof. In order for verified pleadings to constitute proper summary judgment proof, they must conform to the requirements of affidavits, i.e., they must establish the affiant's competency to testify to the matters in question, be based upon personal knowledge, and contain a clear explication of factual information that would be admissible at trial, not mere unsupported conclusions."). I have not considered the material within these documents, some of which are unsworn, which is not demonstrably based on personal knowledge.

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact....'' *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. In deciding the motion, the Court must view all inferences drawn from the facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

(ii)

Miller died on May 30, 1996. She was an employee of American Telephone & Telegraph ("AT&T") and a plan participant in the AT&T life insurance employee welfare benefit plan. AT&T funded the benefits provided by the AT&T Plan through the purchase of life insurance from MetLife. Upon her death, the proceeds of Miller's life insurance policy were to be paid to her designated beneficiary, in accordance with the terms of the AT&T Plan. Previously, on April 25, 1986, Miller had designated Griner, her then husband, as the sole primary beneficiary of her life insurance benefits, and her father, Dell, as contingent beneficiary. Griner remained the sole primary beneficiary even after his divorce from Miller on September 20, 1994.

On June 24, 1995, Miller married Hall. Shortly thereafter, Miller learned that she had an aggressive form of uterine cancer. In spite of her illness, Miller continued to work at AT&T in a demanding position until her condition worsened. She was eventually hospitalized.

In early May 1996, aware that Miller's condition was not improving, Hall obtained the services of an attorney, Alan Dumoff ("Dumoff"), on behalf of his wife, to "place her affairs in order in the event of her death." Hall's Mem., Ex. D., p. 2. Dumoff first spoke to Miller by phone on May 16, 1996. At that time, Miller was still receiving care in the hospital. Dumoff and Miller discussed her needs and the services Dumoff could provide. Miller's second communication with Dumoff occurred on May 20, 1996, when Dumoff visited Miller at the hospital to review the documents he had prepared at her request and to discuss her needs further.

Subsequently, Miller was discharged from the hospital and returned home for hospice care. On May 24, 1996, Dumoff met with Miller at her home and reviewed details related to the documents that he was preparing for her. During this visit, Miller expressed to Dumoff that, much to her embarrassment, she believed she had failed to remove Griner as beneficiary of her life insurance policy. She asked Dumoff to have Griner removed as beneficiary and Hall designated as the sole primary beneficiary.

Miller executed the documents that Dumoff had prepared at her request during his visit to her home on May 27, 1996, three days before her death. The following persons were present: Dumoff, Corinne Kallen, a notary engaged by Dumoff, and Hall. The documents included the following: a Pourover Will; a Living Trust Agreement; an Advance Directive and Designation of Health Care Agent; a General Power of Attorney; and the Affidavit of Beneficiary Designation, revoking prior beneficiary designations of her life insurance and designating Hall as the sole beneficiary.

Shortly after Miller's funeral, Hall called Griner and requested that he come to New Jersey to help him evaluate a message that, according to Griner's version of his conversation with Hall, Jackie had sent through a medium. On June 10, 1996, Griner met with Hall in New Jersey. Griner, a priest, asserts that he agreed to meet with Hall in the hope that he would be able to provide pastoral counseling to Hall. Instead, Hall asked Griner to sign documents in connection with Miller's estate. Griner executed the documents, including one captioned "Release and Assignment of Benefits and Release of Claim and Liabilities," in which Griner waived all claims he may have had to Miller's life insurance benefits. Griner claims that he was not aware that he was signing away rights that he may have had. He asserts that he did not realize the consequences of executing the documents until he later learned that MetLife had written to him at his former address to advise him that, according to the documents in the possession of MetLife, he was

the designated beneficiary of Miller's life insurance policy.

Dell, the contingent beneficiary, has not formally answered the complaint in this action; however, acting pro se, he opposes Hall's motion for summary judgment. Dell seems to take the position that if the release and assignment document is effective, then the policy benefits should be awarded to him.

This suit resulted from the competing claims made to MetLife by the parties.

(iii)

Hall contends that he is entitled to summary judgment because the evidence shows that Miller was competent at the time she designated him as the beneficiary in the Met-Life policy and, alternatively, that Griner waived any claim to the policy proceeds. Griner, on the other hand, challenges Miller's designation of Hall as beneficiary on the ground that she was not competent to make such a decision. Additionally, Griner asserts that in order for Miller to have validly changed the beneficiary of her life insurance, she had to comply fully with the provision of the life insurance plan requiring that all changes be made on a MetLife change of beneficiary designation form. He argues further that Hall tricked him into signing the release and assignment of the policy proceeds. Dell also contends that Miller was not mentally competent to change beneficiaries on May 27, 1996. He and Griner suggest, finally, that Miller's signature on the affidavit was forged.

The parties have largely grounded their arguments on the law of Maryland. Hall acknowledges, however, that under the circumstances presented, ERISA preempts Maryland law, but he contends that the outcome is the same whether Maryland law or federal law is applied.

 In *Phoenix Mut. Life Ins. Co. v. Adams,* 30 F.3d 554, 558–65 (4th Cir.1994), *aff'g* 828 F.Supp. 379 (D.S.C.1993), the Fourth Circuit held that ERISA preempted South Carolina law with regard to determin-

ing the validity of an attempted change in the designation of the beneficiary of an ERISA-covered life insurance policy, and recognized a federal common law of "substantial compliance." *Id.* at 562. The Court defined the substantial compliance doctrine applicable under ERISA as follows:

> [A]n insured substantially complies with the change of beneficiary provisions of an ERISA life insurance policy when the insured: (1) evidences his or her intent to make the change and (2) attempts to effectuate the change by undertaking positive action which is for all practical purposes similar to the action required by the change of beneficiary provisions of the policy.

30 F.3d at 564 (*quoting* 828 F.Supp. at 388). Here, as in *Phoenix Mutual,* the life insurance proceeds at issue derive from an employee benefit plan governed by ERISA; consequently, *Phoenix Mutual* is controlling in this case.

 Applying *Phoenix Mutual* to the record in the case at bar, there can be no doubt that the evidence is sufficient to establish that, as a matter of law, Miller satisfied the federal common law substantial compliance criteria. She, with her husband's assistance, retained counsel and instructed counsel to do what was necessary to effect a change in her beneficiary designation. Counsel, working with her husband (who belatedly received a form from MetLife), did so, met with Miller to discuss in detail her decision to change the beneficiary (and closely-related testamentary decisions), and witnessed Miller manifest her assent to the change by affixing her signature on the document he had prepared to substitute for the form preferred by the insurer. In addition to counsel, an independent witness, a state-licensed notary public, attests to the facts surrounding Miller's execution of the substitute designation form. Accordingly, under ERISA, as construed in *Phoenix Mutual,* as a matter of law, Miller's change of beneficiary was effective on May 27, 1996.[3]

---

**3.** Thus, Griner's argument that Miller's change of beneficiary was invalid because she did not comply with the life insurance policy's requirement of completing a new beneficiary designation

form is beside the point. The policy states, "You can change your beneficiaries at any time by completing a new beneficiary designation form." Due to her physical condition, Miller was depen-

**564**

(iv)

 Apart from the issue of substantial compliance, Griner and Dell contend vigorously that Miller was not competent to change the beneficiary of her life insurance on May 27, 1998. They assert that Miller's physician regarded her as incapable of "testamentary capacity" at the time she signed the affidavit changing the beneficiary. They have failed, however, to present even a scintilla of evidence to support this assertion. In her unsworn statement (labeled "affidavit"), Miller's mother, Mrs. Dell, states that she spoke with Miller on May 27, 1996, and that she "mumbled incoherently." Even if it were in proper Rule 56 form, this statement is insufficient to create a genuine issue of material fact as to Miller's competency. *Cf. Mecutchen v. Gigous,* 150 Md. 79, 132 A. 425, 428, 429 (1926)("[M]umbling and inattention may be consistent with testamentary capacity.... 'Conversations or actions, or declaration of the testator, inconsistent with sanity,' are alone those which serve as proof of incapacity....' ").[4]

 Like the question of the effectiveness of the change of beneficiary, the question of Miller's competency is also properly resolved under federal common law. *Cf. Phoenix Mutual, supra.* *Taylor v. United States,* 113 F.Supp. 143 (W.D.Ark.1953), *aff'd,* 211 F.2d 794 (8th Cir.1954), involving a suit on a military life insurance policy, adopted the follow-

ing standard as a federal test of mental capacity in the change-of-beneficiary context:

To be capable of effecting a valid change of beneficiary a person should have clearness of mind and memory sufficient to know the nature of the property for which he is about to name a beneficiary, the nature of the act which he is about to perform, the names and identities of those who are the natural objects of his bounty; his relationship towards them, and the consequences of his act, uninfluenced by any material delusions.

*Id.* at 148. (citations omitted). Under this test, on the present record, Miller was plainly competent to effect a change in beneficiary.

Griner and Dell have not generated a genuine dispute of material fact in their effort to show that Miller did not know the nature of her act in effecting the change in beneficiaries, or that she did not know that she was leaving the entire benefit to Hall. Relatedly, Griner and Dell have failed to produce substantial evidence that Miller did not know the consequences of her act. Manifestly, the unsworn statement of Dell and Jeanne Winschel, Miller's sister, are not competent evidence. *Cf. In re Estate of Weir,* 475 F.2d 988, 991 (D.C.Cir.1973)("Although caveator's evidence perhaps presented interesting tidbits, the District Court was correct in con-

---

dent on others, including hospice care. It is uncontested that Miller spoke with Dumoff on or about May 16, 1996, regarding estate planning issues. It is further uncontested that Miller met with Dumoff on May 20, 1996, to review the legal documents Dumoff prepared. Moreover, Dumoff met with Miller on May 24, 1996, when, for the first time, Miller stated she may not have changed the beneficiary on her life insurance policy. Thereafter, Dumoff met with Miller on May 27, 1996, when Miller signed not only the Affidavit of Beneficiary Designation, but also other legal documents, including a Pourover Will, a Living Trust Agreement, an Advance Directive and Designation of Health Care Agent and a General Power of Attorney. These facts indicate that Miller did everything in her power, given the circumstances of her serious medical condition, to get her affairs in order.

**4.** Dell also contends in his unsworn statement that Miller had "painful doubts about [Hall's] integrity." He asserts that Hall "badgered her constantly to make a will and change her insur-

ance in his favor." Thus, Dell regards Miller's signature on the affidavit as "highly suspicious" and suggests that it is a forgery. Along these lines, Griner states that Miller would not have signed her name "Jacqueline Dell Miller." Instead, Miller allegedly always signed her name "Jacqueline D. Miller." Contrary to Griner's contention that the signature "could well be Jackie's speaking from the grave, to tell us that that document does *not* express *her* wishes," Griner's Mot. Summ. J. at 3, I view this alleged deviation from an established norm as a "mere eccentricity." *Cf. Lynn v. Magness,* 191 Md. 674, 62 A.2d 604, 607 (1949)("[M]ere eccentricities, such as are found in people of ordinary sound mind, do not show lack of mental capacity. If the law were otherwise, ... 'then few wills could be sustained, for few testators can hope to pass their lives without odd actions and remarks, at times....' ") (*citing Mecutchen,* 132 A. at 429). It also should be noted that as drafted by Dumoff, the signature line called for the use of "Dell" rather than "D."

cluding that there was not enough evidence to go to the jury on the issue of testamentary capacity.")(applying District of Columbia law).

The fact that Miller was on powerful pain medications does not alter this analysis. There is no basis in law to insist, as does Griner, that an affidavit from a medical professional is necessary to permit the conclusion as a matter of law that Miller was competent. Griner does not contend that Miller's pain medication affected her to such an extent that she failed entirely to comprehend the consequences of signing the affidavit prepared by Dumoff. To the contrary, the unrefuted evidence from Dumoff shows that Miller had discussed carefully and coherently the contents of the important documents she had instructed Dumoff to prepare shortly before her death. Hall's evidentiary showing on summary judgment, including Dumoff's affidavit describing in detail his professional relationship and contacts with Miller, illustrates, as a matter of law, that Miller had sufficient mental capacity to change the beneficiary of her life insurance policy.

(v)

The record establishes as a matter of law that Miller substantially complied with the ERISA plan's requirements to effect a change in beneficiary, and that Griner and Dell have failed to produce admissible evidence sufficient to generate a genuine dispute of material fact as to Miller's competency on May 27, 1996. Accordingly, summary judgment shall be granted to Hall. In view of this conclusion, I need not consider the legal effect of the agreement between Griner and Hall pursuant to which Griner ostensibly waived or relinquished his claims to the policy proceeds.