## TOWSON *v.* MOORE.

CONTRACTS; UNDUE INFLUENCE; PRESUMPTION; EVIDENCE.

1. The undue influence for which a will or deed will be annulled must be such that the party making it has no free will, but stands *in vinculis*; it must amount to force or coercion, destroying free agency.
2. The presumption of the exercise of undue influence does not arise except where an advantage has accrued to a party under conditions of existing beneficiary or confidential relations which make it incumbent on the party to show the fairness of the transaction drawn in question; and in general, the burden of proving such undue influence is on the party alleging it.
3. The declarations of a testator or grantor, made either before or after the execution of the will or deed, or of the transaction complained of, are not admissible in evidence to show such undue influence, although they may be admitted to show mental condition.
4. Influence gained by kindness and affection will not be regarded as undue, if no imposition or fraud be practiced, even though it induce a testator or grantor to make an unequal and unjust distribution of his property in favor of those who have contributed to his comfort and ministered to his wants, if such disposition is voluntarily made.

No. 678. Submitted October 12, 1897. Decided November 1, 1897.

HEARING on an appeal by the complainants from a decree dismissing a bill for an accounting. *Affirmed.*

This is a suit in equity for an accounting, in which the facts evolved, so far as they are here necessary to be stated, would seem to be as follows:

William H. Campbell, an old resident of the city of Washington, died on May 21, 1881, leaving a will bearing date on March 16, 1878, and thereafter duly admitted to probate, whereby, after certain specific legacies to his three children, all of whom were then living, and an annuity to a sister, Eloise Campbell, he devised and bequeathed all the rest and residue of his estate to his wife, Mary I. Campbell, in fee simple, with remainder over to his three children, as tenants in common, in the event that his wife should not survive him. Mary I. Campbell survived her husband and took the estate. Of their three children, one, a son, Leonidas C. Campbell, who had been in partnership with his father in his business, died on August 15, 1878, before his father, intestate, as it would seem, and leaving, as his personal representatives and heirs at law, his wife, Mary Kennedy Campbell, who is made a party to these proceedings as committee of their son, William H. Campbell—but why such committee is not stated—and seven children, of whom there were three now married daughters, the appellants, Blanche K. Towson, Edith G. Graham and Nannie C. Towson; and four other children, the appellants, John C. K. Campbell, Mary L. I. Campbell, William H. Campbell (above mentioned), and a daughter May, who intermarried with Henry D. Fry, and has since deceased, leaving two minor children, Gertrude Fry and Edith Fry, who are made parties to the bill of complaint as defendants, but who seem never to have been served with process, or otherwise in any manner brought into the proceedings. The two other children of the testator, William H. Campbell, survived. Both were daughters, of whom one, Julia, intermarried with Alexander W. Russell, and the other, Christiana, intermarried with Frederic L. Moore. These four, with the minors above mentioned, are the defendants in the cause and the appellees in the present appeal. The

will of William H. Campbell is not involved in the present suit, and seems to be referred to only as supposed to throw light on the subsequent transactions.

Mary I. Campbell, the widow, devisee and legatee of William H. Campbell, died on August 6, 1893, leaving a will executed on May 26, 1882, whereby, after some minor bequests not here important to be noted, she left all the rest and residue of her estate to be equally divided in three equal portions between her two daughters, the appellees Julia A. Russell and Christiana V. Moore, and the children of her deceased son, Leonidas C. Campbell, and which will was also duly admitted to probate. Mrs. Campbell at the time of her death had reached the advanced age of ninety-one years. Her last illness was only of three days' duration; and she seems to have remained in the full use of her mental faculties and in reasonably good physical health and vigor, with no more than occasional petty ailments and the natural decrease of strength incident to old age, almost to the last.

Frederic L. Moore and Alexander W. Russell, her two sons-in-law, were the executors of the will of Mrs. Mary I. Campbell, with power to dispose of all the property, real and personal; and they had also been, with Jourdan W. Maury, the executors of the will of William H. Campbell. The estate of William H. Campbell was duly administered and settled. Of the estate of Mary I. Campbell the executors filed their first and final account on November 23, 1894, and all had been disposed of in accordance with the will, except that one piece of real estate remained unsold, when the bill of complaint in this case was filed on April 16, 1896.

Mention has been made of an annuity left by William H. Campbell in his will to his sister, Eloise Campbell. At his death, for the purpose of paying that annuity, his executors set apart United States bonds of the par value of $13,000, and kept them intact during the life of the annuitant. She died on October 1, 1885; and the bonds thereupon became

part of the residue of the estate bequeathed to Mrs. Mary I.
Campbell, the widow.   On October 5, 1885, they were trans-
ferred to her on the books of the Treasury Department;
and on the next day, October 6, 1885, she made a gift of
them, their market value at that time being about $15,000,
in equal shares to her two daughters, the appellees Chris-
tiana V. Moore and Julia A. Russell.   It is the question of
the validity of this gift that constitutes the gist of the pres-
ent suit.   It is claimed that the transfer to Mrs. Moore and
Mrs. Russell was procured by undue influence exercised by
them and by their husbands.   But the bill of complaint is
filed with the double aspect, either of having the transac-
tion declared void on the ground of undue influence, or of
having the gifts construed as advancements, and *pro tanto*
as an ademption of the legacies bequeathed to the daughters
of Mrs. Mary I. Campbell in her will.

As already stated, the bill of complaint was filed on April
16, 1896; and it sought to charge the executors in the final
settlement of their accounts with the value of the bonds in
question as having been received by Mrs. Moore and Mrs.
Russell on account of their several distributive shares of
their mother's estate.   The answers of the several defend-
ants, other than the minors, who never appeared in the
case, and whose interests, of course, are identical with those
of the complainants, fully and emphatically denied all the
substantial allegations upon which the bill was based.

After replication filed and testimony taken, the court
below, when the cause came on for hearing, dismissed the
bill; and from the decree of dismissal the complainants
have prosecuted the present appeal.

*Mr. Arthur A. Birney* for the appellants.

*Mr. Charles H. Cragin* for the appellees.

Mr. Justice MORRIS delivered the opinion of the Court:

1. The theory of the bill of complaint, that the transfer

of the bonds in question by Mrs. Mary I. Campbell, to her two daughters, if voluntary, was not intended by her as a gift *inter vivos*, but as an advancement to them on account of their respective legacies under her will, is wholly unsustained by proof of any kind, is flatly denied by the defendants, and is not insisted on in argument before us. It may, therefore, be dismissed at once from our consideration.

2. The controversy really turns upon the question of the alleged undue influence claimed on behalf of the appellants to have been exercised upon Mrs. Mary I. Campbell by her two daughters and their husbands; and upon the determination of this question depends the determination of the cause.

Undue influence, says the Supreme Court of the United States, in the case of *Conley* v. *Nailor*, 118 U. S. 127, 134, "the undue influence for which a will or deed will be annulled must be such as that the party making it has no free will, but stands *in vinculis*. It must amount to force or coercion, destroying free agency (citing *Stulze* v. *Schaeffle*, 16 Jurist, 909; *Williams* v. *Goude*, 1 Hagg. Eccl. 577; *Armstrong* v. *Huddleston*, 1 Moore P. C. 478)." In this same connection that court cites with approval the case of *Eckert* v. *Floury*, 43 Pa. St. 46, and the case of *Davis* v. *Calvert*, 5 Gill & J. 269, 302, in both of which the same doctrine is laid down in substantially the same language.

Undue influence, it is true, is in general a subtle influence, a species of fraud, difficult to be proved, and difficult to be disproved. In general, its existence can only be established by circumstantial evidence, and by a concatenation of circumstances. The presumption of its exercise does not arise except where an advantage has accrued to a party under conditions of existing fiduciary or confidential relations which make it incumbent on the party to show the fairness of the transaction drawn in question. In general, the burden of proving such undue influence is on the party alleging it. *Boyse* v. *Roseborough*, 6 H. L. Cases, 2; *Davis* v. *Davis*,

123 Mass. 590; *Webber* v. *Sullivan*, 58 Iowa, 260; *Conley* v. *Nailor*, 118 U. S. 135.   This burden the complainants undertook in the present case; but we think that they have wholly failed to establish their charge by any sufficient evidence, and that, on the contrary, the evidence in favor of the defendants in disproof of the charge is overwhelming. In fact, if we were wholly to disregard the testimony on behalf of the defendants, we would have to hold, on the showing of the complainants themselves, that they had not proved their case.

Beyond the fact of some unimportant and irrelevant testimony that both William H. Campbell and Mary I. Campbell always intended to treat their children and descendants equally and to divide their estates equally between them, the only substantial testimony on behalf of the complainants, if such it can be called, to establish the charge of undue influence, is contained in the deposition of one of their witnesses, Mrs. Laura Ellen Baker, who testified as follows:

"She (Mrs. Mary I. Campbell) told me that Mrs. Moore and Mrs. Russell had made her promise that, if she was to outlive Miss Eloise Campbell, she would divide $12,000 between them equally, and that they worried her so, to get rid of them she promised them."

"After her death (the death of Eloise Campbell) she (Mary I. Campbell) told me she had divided it equally between Mrs. Moore and Mrs. Russell—$12,000, she told me, which she supposed her husband had laid aside for the support of Miss Eloise.   After she told me she had divided this money equally, she wanted the rest of her money to go to her grandchildren."

Mrs. Baker at first testified that this conversation between Mrs. Campbell and herself occurred within less than a year before Mrs. Campbell's death (which occurred, as already stated, in August of 1893.)   Afterwards she returned to correct her testimony, and stated that it occurred about a month or six weeks after the death of Eloise Campbell (which was

on October 1, 1885). She testified, likewise, with considerable particularity that the conversation took place in a room in the house of Mr. and Mrs. Moore, with whom Mrs. Mary I. Campbell was then staying.

Notwithstanding that she further testified that, when this conversation occurred, she was alone with Mrs. Campbell, it was sought by the complainants to corroborate her testimony by that of her daughter, Eliza Burgess Baker, who was called in rebuttal to testify that she was present at the time with her mother in the room in the house of the Moores, and heard the conversation. A witness, Thomas Brooke, was also called in rebuttal to testify that Mrs. Baker had repeated the alleged conversation to him in or about the month of October, 1885. Mrs. Mary Kennedy Campbell, the mother of the complainants, also testified to having had the conversation repeated to her by Mrs. Baker "just as soon as Mrs. (Mary I.) Campbell told her," and "a very short time" after the death of Eloise Campbell.

Besides the inherent improbabilities and inconsistencies of this story, it is shown conclusively that no such conversation could have occurred at the time and at the place specified. For it is proved as conclusively as human testimony can prove anything, that at the time of the alleged conversation, Mrs. Mary I. Campbell was not at the house of the Moores; that in consequence of the intended absence of the Moores from the District of Columbia on account of the surgical treatment needed to be administered to Mrs. Moore in New York, Mrs. Mary I. Campbell left their house between the 10th and 15th of October, 1885; that she went immediately to reside with their married daughter, a Mrs. Tenney; that she returned to their house when they returned from New York, about the middle of December following; that she remained with them until June of 1886, when they went to Europe, and she went to reside with Mrs. Russell in Philadelphia; that she remained with Mrs. Russell until 1891, when she returned to the house of the Moores, with whom

she continued to reside until her death. It is more prob-
able, therefore, that if the alleged conversation between Mrs.
Mary I. Campbell and Mrs. Baker took place at all, it oc-
curred at the time first stated by the latter; that is, a little
while before Mrs. Campbell's death; and that it may well
have been the result of some temporary annoyance
or irritation incident to her advanced years and failing
health.

Opposed to any inference of undue influence which might
be deduced from such alleged conversation is the deliberate
statement in writing of Mrs. Mary I. Campbell on two differ-
ent occasions.    Discontent, it seems, had been engendered in
the mind of Mrs. Mary Kennedy Campbell on account of
some supposed inequality in the will of William H. Camp-
bell; and some ill feeling had resulted between her and the
other members of the family, apparently including also Mrs.
Mary I. Campbell, her mother-in-law.    But there was some
semblance of reconciliation before the death of Miss Eloise
Campbell in 1885, when Mrs. Mary I. Campbell, wrote in
her own handwriting a statement, one copy of which was
sent to her daughter Julia, and one to Mrs. Mary K. Camp-
bell, in which she stated that no undue influence had been
used by her daughter Julia in the making of her father's
will, as had been charged against her; and that the legacies
left to his two daughters in that will did not equalize them
with his son, Leonidas, and that the books (presumably the
books of the firm of W. H. Campbell & Son) even then, in
1885, showed that the son had received $6,897.52 more than
the daughters had received.

Again, on October 6, 1885, the day of the gift which is
in controversy here, Mrs. Mary I. Campbell, for the purpose,
as it is stated, that there should be some written evidence of
the transaction, in view of the discontent previously mani-
fested, wrote and signed a paper, in which she stated that
she had "voluntarily, and without suggestion from any one,"
given the bonds in question to her two daughters, in order

to "equal their share with the amount received by their brother and his family."

According to her own testimony, Mrs. Mary Kennedy Campbell had knowledge of this gift soon after it was made; and she had in her possession the previously executed statement by Mrs. Mary I. Campbell that her son Leonidas and his family had received $6,897.62 more than either of the daughters; and yet for more than ten years afterwards, and until the filing of the bill of complaint in the present case, the record shows no protest whatever of any kind by her or by any one against the correctness of the statement or the propriety of Mrs. Mary I. Campbell's action, and no investigation whatever of any kind by her to ascertain the facts. The record, on the facts alone, is conclusive against the position and contention of the appellants.

But even if we assumed the truth and entire correctness of the statement claimed to have been made by Mrs. Mary I. Campbell to Mrs. Baker, it would be insufficient, either in law or in fact, to establish the existence of undue influence. The declarations of a testator or grantor, made either before or after the execution of the will or deed, or of the transaction complained of, are not admissible in evidence to show such undue influence, although they may be admitted to show mental condition (*Venable* v. *Bank of United States,* 2 Pet. 7; *P. T. R. Co.* v. *Stimpson,* 14 Pet. 448; *Massey* v. *Huntington,* 118 Ill. 80); and vested rights should not be overthrown upon any such declarations as are here alleged. They are too insufficient a foundation on which to sustain a charge of fraud or undue influence.

Here was a lady of eminent truthfulness and religious disposition; quite advanced in years, it is true, but conceded even by the complainants to have been in the full possession of all her mental faculties; a person even of vigorous intellect and independent will, and for her advanced years not unduly weak in body; and between whom and her two daughters, according to the great preponderance of the evi-

11 Ct. App.—26

dence, the most kindly relations existed. In order to show that such a person was the victim of undue influençe on the part of the daughters, with whom she made her home to the day 'of Her death, some stronger evidence should be adduced than that which is presented in this record. Appropriate to the situation may be cited what the Supreme Court of the United States said in the case of *Mackall* v. *Mackall*, 135 U. S. 167:

"Influence gained by kindness and affection will not be regarded as *undue*, if no imposition or fraud be practiced, even though it induce the testator to make an unequal and unjust distribution of his property in favor of those who have contributed to his comfort and ministered to his wants, if such disposition is voluntarily made."

But it is needless to pursue the subject farther. It is clear to us that in dismissing the bill of complaint the court below was entirely right; and that, therefore, the decree of dismissal should be *affirmed, with costs. And it is so ordered.*