# HAGERTY *v.* OLMSTEAD.*

WILLS; EVIDENCE; TESTAMENTARY CAPACITY; UNDUE INFLUENCE; QUESTIONS FOR JURY; PRESUMPTIONS.

1. The evidence is sufficient to take to the jury the question of the mental capacity of the testatrix to make a will, where four witnesses expressed the opinion that she was of unsound mind, and related the circumstances upon which their conclusions were based, and the conduct of the testatrix for almost three months prior to her death, as disclosed by the testimony of a number of witnesses, showed a marked change in her habits and bore the symptoms of insanity.

2. It is competent for the court to submit to the jury all the circumstances concerning the execution of a will, and when it appears that confidential relations existed between the testatrix and the principal beneficiary, it is for the jury to infer from all the evidence before it whether or not the execution of the will was the result of improper inducement or fraud.

3. That the executor and residuary legatee, who was looking after the business affairs of the testatrix, was present when she produced a memorandum of the disposition she desired made of her property; knew that his brother, his wife, and he were the chief legatees, and, after suggesting that a will be drawn in legal form, had one prepared, leaving out, on the ground that it might give the impression of undue influence, a small bequest to the matron of the hospital where the testatrix was being cared for; and that he summoned witnesses and supervised the execution of the instrument,—raises a presumption of undue influence, and casts upon him the duty of rebutting it by showing that the will was made as the free and voluntary act of the testatrix.

No. 2428.   Submitted October 8, 1912.   Decided November 4, 1912.

---

*Wills.*—As to evidentiary force of circumstance that one benefited by a will was the draftsman thereof, or was active in procuring its execution, see presentation of authorities in *Kirby* v. *Sellards,* 28 L.R.A. (N.S.) 270.

D. C.]                          Argument of Counsel.

HEARING on an appeal by the caveators from a judgment of the Supreme Court for the District of Columbia sustaining the validity of a will.                                         *Reversed.*

The COURT in the opinion stated the facts as follows:

This in an appeal from a judgment of the supreme court of the District of Columbia in probate, sustaining the validity of the last will and testament of one Josephine R. Hagerty. Her estate amounts to about $10,500. In her will, after providing for her funeral expenses, she bequeathed "to any sister, brother, niece, or nephew of mine who may appear after my death and request my executor therefor, the sum of one Dollar ($1);" to Saint Stephens Catholic Church, New York city, $500; to Miss Janet Oliphant and Miss Sarah Oliphant, of Washington, District of Columbia, $1,000 each; to Edwin Olmstead, of Cleveland, Ohio, $1,000; to Saint Rose Cancer Hospital, New York city, $1,000; to Miss Nellie McCauley, New York city, $500; to Bettie Olmstead (wife of Victor H. Olmstead), $2,000, and to Victor H. Olmstead, who is named in the will as executor without bond, all the rest, residue, and remainder of her estate.

The will was presented for probate by the executor. A surviving brother and two sisters filed a petition and caveat, charging that at the time of executing the alleged will, the testatrix was not of sound and disposing mind and memory, and was not capable of executing a valid deed or contract, and that the will was procured by Victor H. Olmstead and other persons through undue influence and fraud. Issues were framed between the caveators and the proponent of the will, for trial by jury. At the conclusion of the taking of the testimony, the court, on its own motion, directed the jury to return a verdict sustaining the validity of the will. From the judgment entered thereon, this appeal is prosecuted.

*Mr. Corry M. Sladden,* for the appellants:

1. It is seldom possible, and never necessary, to prove undue

influence and fraud by witnesses. *Davis* v. *Clavert,* 5 Gill & J. 269; *Moore* v. *McDonald,* 68 Md. 321; *Griffith* v. *Diffenderfer,* 50 Md. 488; *Beaubien* v. *Cicotte,* 12 Mich. 459; *Rollwagen* v. *Rollwagen,* 63 N. Y. 519; *Barbour* v. *Moore,* 25 Wash. L. Rep. 55; *Walls* v. *Walls,* — Ky. —, 99 S. W. 969.

2. Whenever the provisions of a will are inconsistent with natural justice, it will require strong proof of capacity and volition to sustain it, and slight proof of undue influence or fraud to set it aside. Wharton & Stille, 1, 89, *et seq.; Brydges* v. *King,* 1 Hagg. Eccl. Rep. 256; *Rollwagen* v. *Rollwagen,* 63 N. Y. 504; *Kinne* v. *Johnson,* 60 Barb. 69; *Brick* v. *Brick,* 66 N. Y. 559; *Tyler* v. *Gardiner,* 35 N. Y. 559; *Snyder* v. *Sherman,* 23 Hun, 139; *Baker* v. *Lewis,* 4 Rawle, 356; *Bitner* v. *Bitner,* 65 Pa. 347; *Goble* v. *Grant,* 3 N. J. Eq. 629; *Lyons* v. *Van Ripen,* 26 N. J. Eq. 337; *Cadwalader* v. *West,* 48 Ark. 151; *Drake's Appeal,* 45 Conn. 9; *Hiss* v. *Wick,* — Md. —, 28 Atl. 403; *Hammond* v. *Dike,* 42 Minn. 273.

3. Where the confidential relation of the person benefited to the decedent is shown to have existed, and he is a stranger in blood, the burden of proof is cast upon him to show that he did not abuse his opportunities. *Drake's Appeal,* 45 Conn. 1; *Gay* v. *Gillfilan,* 92 Mo. 250; *Smith's Will,* 95 N. Y. 516; *Garvin* v. *Williams,* 44 Mo. 465; *Greenfield's Case,* 2 Harris, 489; *Crispill* v. *Dubois,* 4 Barb. a, 398; *Beall* v. *Mann,* 5 Ga. a, 470; *Fritz* v. *Turner,* 46 N. J. Eq. 515, 518; Jarman, Wills, 6th ed. p. 36.

*Messrs. McNeill & McNeill,* for the appellee:

1. Undue influence or fraud operating upon the mind of testatrix must be affirmatively shown by direct proof or by evidence from which a direct inference may be drawn; a will formally executed will not be set aside upon suspicion. *Beyer* v. *Le Fevre,* 186 U. S. 114; *Leach* v. *Burr,* 188 U. S. 510; *Stout* v. *American Security & Trust Co.* 23 App. D. C. 29; *Monague* v. *Herrill,* 13 App. D. C. 455; *Conley* v. *Nailor,* 118 U. S. 127; *Knox* v. *Knox,* 95 Ala. 495, 36 Am. St. Rep. 235; *Re Townsend,* 128

Ia. 621, 105 N. W. 110; *Re Snelling,* 136 N. Y. 517, 32 N. E.
1006; *Cutler* v. *Cutler,* 103 Wis. 258, 79 N. W. 240; *Maddox*
v. *Maddox,* 114 Mo. 35, 35 Am. St. Rep. 734; *Tyson* v. *Tyson,*
37 Md. 581.

2. The fact that testatrix's property was given to others than
her relatives, and to persons who were kind to her, is not a cir-
cumstance from which an inference can be drawn that there was
undue influence exercised upon her. *Riddle* v. *Gibson,* 29 App.
D. C. 237; *Mackall* v. *Mackall,* 135 U. S. 167; *Towson* v.
*Moore,* 11 App. D. C. 377; *Re Will of Griffith,* 31 Wash. L.
Rep. 15; *Re Shelly,* 34 Wash. L. Rep. 801.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

Appellants challenge the action of the trial court in directing
a verdict in favor of appellee. We can, therefore, content our-
selves with an inquiry into the facts to ascertain whether, from
the evidence, an issue of fact was presented which should have
been submitted to the jury.

It appears that testatrix died at the Home for Incurables in
the city of Washington, where she had been confined for about
two months. Prior to being placed in the hospital, she had been
cared for during the period of about one month at the home of a
Mrs. Shepard in this city. The evidence adduced by the cave-
ators showed that when she came to Mrs. Shepard from New
York city, where she had been employed as a saleswoman, she
was in bad health, suffering from cancer of the uterus. Three
witnesses, including Mrs. Shepard, who had an opportunity to
observe her condition while she was stopping at Mrs. Shepard's
house, testified as to her demeanor; that she used profane lan-
guage, and demeaned herself in a vulgar and obscene manner;
that on numerous prior occasions when she had visited Mrs.
Shepard she had always conducted herself in a ladylike manner,
and that she was an educated, refined woman. Two of these wit-
nesses expressed their opinion that from her conduct she was of
unsound mind and insane. Counsel for caveators produced as
a witness one Dr. Isabelle H. Lamb, who testified that she made

a specialty of diseases of women, and had examined testatrix a number of times while she was stopping at Mrs. Shepard's house; that she was afflicted with cancer of the uterus, and that "witness would say that from the action of the patient, the profound anemia she was showing, that she was affected mentally; her disease diminished nutrition and therefore the functional activity of any part of the body and brain also. The corresponding feebleness of the brain was in ratio with that of the body. * * * From what witness observed of testatrix, considering the severe condition of the pelvic organs in her case, and also the pronounced anemia, from the evidence of absorption of toxins, from her manner and actions, she would say that testatrix was certainly suffering from a very serious functional disorder in her brain, amounting to partial insanity."

True, the physician who attended testatrix at the hospital contradicted in some particulars the testimony of Dr. Lamb, but on one important point touching his view of the mental condition of testatrix he was impeached by the testimony of three witnesses. On the question of the mental capacity of testatrix, we think there was sufficient evidence to take the case to the jury, and it was error in the trial judge to withdraw it from their consideration. Four witnesses expressed the opinion that testatrix was of unsound mind, and related the circumstances upon which their conclusions were based. The conduct of testatrix for almost three months prior to her death, as disclosed by the testimony of a number of witnesses, bore the symptoms of insanity. A marked change in her habits was exhibited. Her conduct and demeanor were just the reverse of what they had been prior to her illness, and were such as to disclose an abnormal state of mind. True, there was conflict in the evidence on most of these points, but that only emphasizes the propriety of submitting the case to the jury.

Coming to the question of undue influence, it must be remembered that the will was made when testatrix was *in extremis,* about twenty-four hours before she died. The executor and residuary legatee was looking after her business affairs, was present when testatrix produced a penciled memorandum of the

disposition she desired made of her property, knew that his brother, his wife, and he were the chief legatees under the will, advised testatrix that probably the memorandum would not stand in court if contested, suggested that a will be drawn in legal form, had such will prepared, left out a small bequest appearing in the memorandum to the matron of the hospital, for the reason, as he states, that if it had been embraced in the will it might have given the impression that undue influence had been exerted upon the testatrix; and finally he took the will to her, summoned witnesses, and supported her up in bed while she signed it. The mental state of testatrix in her enfeebled condition was such as to make her easily a victim of designing persons. As the court said in *Walls* v. *Walls,* 30 Ky. L. Rep. 948, 99 S. W. 969: "Incapacity opens the door to undue influence, and when opportunities for such influence are shown, and the favored devisees are the beneficiaries of a will unnatural in its provisions, to the exclusion of others having equal claims at least upon his bounty, very slight circumstances are sufficient to make the question of undue influence one for the jury."

It is not necessary that there be direct proof of fraud or undue influence. It is competent for the court to submit to the jury all the circumstances concerning the execution of the will; and when it appears that confidential relations existed, as in this case, between the testatrix and the principal beneficiary under the will, it is for the jury to infer from all the evidence before it whether or not the execution of the will was the result of improper inducement or fraud. We think the admitted transactions of the executor and chief beneficiary in connection with the execution of this will were sufficient to raise a presumption of undue influence, and cast upon him the duty of rebutting it by showing that the will was made as the free and voluntary act of the testatrix. The law is well settled in such a case. "General evidence of power exercised over the testator, especially if he be of comparatively weak mind from age or bodily infirmity, though not to such an extent as to destroy testamentary capacity, will be enough to raise a presumption, which ought to be met and overcome before such a will can be established. Particular-

ly ought this to be the rule when the party to be benefited stands in a confidential relation to the testator. 'Where the party,' says Mr. Redfield, 'to be benefited by the will has a controlling agency in procuring its formal execution, it is universally regarded as a very suspicious circumstance, and one requiring the fullest explanation. Thus, where a will was written by an attorney or solicitor, who is to be benefited by its provisions, it was considered that this circumstance should excite stricter scrutiny, and required clearer proof of capacity, and the free exercise of voluntary choice:' Redfield, Wills, 515, citing *Duffield* v. *Robeson,* 2 Harr. (Del.) 384. Undoubtedly if the counsel of an old man whose mental faculties are impaired, though not destroyed by advanced age, should draw for him a will giving to himself the bulk of his estate, or a very considerable part of it, it would not be enough to show the formal execution of the paper, in the presence of two subscribing witnesses called in for the purpose. He must go further, and rebut the presumption by some evidence that the disposition made was the exercise of the free will of the testator." *Boyd* v. *Boyd,* 66 Pa. 283.

The action of the court in directing a verdict is the only question advanced by this appeal worthy of consideration. This, however, as we view it, is serious in the light of the record. We are of opinion that an issue of fact was raised by the evidence which should have been submitted to the jury.

For the error committed the judgment is reversed, with costs, and the cause remanded for a new trial.           *Reversed.*