**Julian HIMMELFARB, Appellant,**

v.

**Benjamin GREENSPOON et al., Appellees.**

**No. 13722.**

District of Columbia Court of Appeals.

Argued Oct. 25, 1979.

Decided Feb. 7, 1980.

Rehearing En Banc Denied March 10, 1980.

Harry L. Ryan, Jr., Arlington, Va., with whom Robert W. Hickey, Arlington, Va., was on the brief, for appellant.

Philip N. Margolius and J. Harry Welch, Washington, D. C., with whom William F. Krebs, Washington, D. C., was on the brief, for appellees.

Before KELLY, NEBEKER and MACK, Associate Judges.

KELLY, Associate Judge:

This case is before us for the second time.[1] In this appeal, appellant Himmel-

---

1. In *Estate of Himmelfarb*, D.C.App., 345 A.2d 477 (1975), a division of this court reversed the trial court's dismissal of appellant's complaint on the grounds of res judicata and equitable estoppel.

farb challenges (1) the trial court's dismissal of paragraph 8A of his complaint for failure to comply with the court's discovery orders [2] and (2) the trial court's grant of summary judgment in favor of appellees as to the remainder of the complaint. We affirm.

The case has a long history, only a small part of which is relevant to the instant appeal. Mr. Paul Himmelfarb, appellant's father, died on January 16, 1968, leaving an estate valued at approximately $1.7 million. His will, as amended by four codicils,[3] provided that each of the testator's eight children would receive $10,000 if he or she did not contest the will.[4] At the time of Mr. Himmelfarb's death, his testamentary scheme left most of his estate to the Paul and Annetta Himmelfarb Foundation, Inc., a nonprofit charitable foundation established by the testator during his lifetime.

On November 14, 1973,[5] appellant filed a complaint challenging the validity of the will, naming appellees (the Paul and Annetta Himmelfarb Foundation, Inc., and the four executors nominated in the will) and approximately eighty-five other persons as defendants. In summary, the complaint alleged that (1) the testator lacked the requisite testamentary capacity to execute his will and codicils; (2) the will and codicils had been obtained from the testator by the use of fraud and deceit; (3) the will and codicils had been procured through undue influence and duress; and (4) the appellees, by violating their fiduciary duties to the testator, had controlled and used the testator's estate to their own advantage.

On July 30, 1976, appellees served interrogatories on appellant asking him to state specifically the facts that he would rely on at trial to substantiate the allegations of the complaint. Appellant's answers were extremely general and appellees filed an objection to them on September 15, 1976.[6] On January 12, 1977, the Honorable Margaret Haywood issued an order compelling appellant to produce more complete and specific answers. The answers filed on February 15, 1977 were still deficient. On May 11, 1977, after appellees' motion for a second order compelling answers, Judge Haywood specifically ordered appellant to relate his facts to the exact dates and circumstances of the execution of the will and codicils.[7] The answers appellant filed on July 14, 1977 [8] were strikingly similar to the previous ones he had filed. Appellees then

2. Appellant contends that, since the trial court's dismissal of paragraph 8A was improper, its award of expenses to appellees in connection with the dismissal was also improper. Since we find no error in the dismissal, we do not reach this issue.

3. The will was executed on June 29, 1962. The codicils were executed on February 12, 1964, January 4, 1965, December 10, 1965, and February 16, 1966.

4. The will states that the testator made "ample and substantial provisions for [his] children by gifts and by the establishment of several trusts for their benefit." The $10,000 bequests were simply "a token of [his] affection for each of them." As the testator said in his will, his intent was "to carry out a long-cherished aim to bequeath the bulk of [his] estate for religious, educational and charitable uses."

5. D.C.Code 1973, § 18–509 provides:
 After a will has been admitted to probate, a person in interest may, within six months from the date of the order of probate, file a verified caveat to the will, praying that the probate thereof be revoked.

Because appellant's sister filed a caveat in 1968, which was not settled until May of 1973, the order of probate was not issued until June 27, 1973.

6. On October 25, 1976, appellant's counsel promised that he would deliver more detailed answers to counsel for appellees by November 3, 1976. Those answers were never delivered.

7. Judge Haywood's order read as follows:
 ORDERED, that on or before the expiration of twenty days from the date of this order the plaintiff shall serve upon defendants more complete answers to defendant's interrogatories setting forth therein facts which relate and refer to the time the will and codicils of the decedent were executed and setting forth how such facts relate to the plaintiff's contentions that probate of the last will and codicils of the decedent be revoked and letters testamentary of the executors be cancelled.

8. Appellant, apparently unable to comply within the twenty days ordered by the court, filed a motion for an extension of time in which to answer. The motion was granted.

filed a motion to dismiss paragraph 8A, the paragraph that alleged lack of testamentary capacity. On February 9, 1978, Judge Haywood dismissed paragraph 8A pursuant to Super.Ct.Civ.R. 37(b)(2)(C). Appellees' motion for summary judgment as to the remainder of the complaint was granted on June 14, 1978.

Appellant contends that the dismissal of paragraph 8A for failure to comply with the court's discovery orders was improper. Arguing that his interrogatory answers regarding paragraph 8A raised genuine issues of material fact, he urges us to review this dismissal pursuant to Super.Ct.Civ.R. 37(b)(2)(C)[9] under the summary judgment standard of review.[10] We cannot do so.

■ The trial court has broad discretion under Rule 37 to dismiss an action or part of an action for failure to comply with discovery orders. *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976); *United States Merchandise Mart, Inc. v. D&H Distributing Co.,* D.C.App., 279 A.2d 511 (1971). The court's dismissal will be reversed only if there has been an abuse of that discretion. *National Hockey League v. Metropolitan Hockey Club, Inc., supra,* 427 U.S. at 642, 96 S.Ct. at 2780; *Coleman v. Lee Washington Hauling Co.,* D.C.App., 392 A.2d 1067 (1978). In deciding whether there has been any abuse, we must examine the "entire proceedings prior to [the imposition of the sanction]." *United States Merchandise Mart, Inc. v. D&H Distributing Co., supra* at 513. We will not disturb the trial court's exercise of discretion unless we are convinced that it abused that discretion by "imposing a penalty too strict or unnec-

essary under the circumstances." *Dodson v. Evans,* D.C.App., 204 A.2d 338, 341 (1964) (citation omitted).

■ The record shows that appellant was given three opportunities to provide proper answers to appellees' interrogatories. Since the court's orders were explicit in their instructions, we must assume that he was aware of what was required of him. His second set of answers, following the court's first order requiring more complete and specific answers, was substantially the same as his first set. His third set of responses was similar to the first two and again failed, without a valid explanation, to relate the facts to the specific times of execution of the will and codicils, as specifically requested by Judge Haywood's second order.[11] Moreover, by the time appellant filed his third set of answers, almost a full year had elapsed since the interrogatories were first propounded. Such an unwarranted time lapse is directly contrary to the spirit of Super.Ct.Civ.R. 1, which calls for "the just, speedy, and inexpensive determination of every action." *See United States Merchandise Mart, Inc. v. D&H Distributing Co., supra* at 514. In light of these facts and proceedings, we find that Judge Haywood did not abuse her discretion by dismissing paragraph 8A of appellant's complaint.

Appellant's second contention is that the trial court improperly granted appellees' motion for summary judgment as to the remainder of the complaint. In reviewing a grant of summary judgment, we begin with the clear language of Super.Ct.Civ.R. 56(c): summary judgment is properly granted "if the pleadings, depositions, [and] answers to

---

9. Super.Ct.Civ.R. 37(b)(2)(C) reads in pertinent part:

FAILURE TO MAKE DISCOVERY: SANCTIONS

(b) FAILURE TO COMPLY WITH ORDER.

\* \* \* \* \* \*

(2) SANCTIONS BY THIS COURT. If a party . . . fails to obey an order to provide or permit discovery, . . . the court [in which the action is pending] may make such orders in regard to the failure as are just, and among others the following:

\* \* \* \* \* \*

(C) An order . . . dismissing the action or proceeding or any part thereof . . . .

10. Summary judgment is proper only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Super.Ct.Civ.R. 56(c); *see* discussion at pp. 982–983, *infra.* For a detailed review of summary judgment principles, see *Nader v. de Toledano,* D.C.App., 408 A.2d 31, 41–43 (1979).

11. *See* note 7, *supra.*

interrogatories, . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The facts are to be viewed in the light most favorable to the party opposing the motion (appellant), *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962), and the burden is on the moving party (appellees) to establish the lack of a triable factual issue. *See Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970); *Willis v. Cheek,* D.C.App., 387 A.2d 716, 719 (1978); 6 Moore's Federal Practice ¶ 56.15[8] at 642.

The first prong of our review requires that we "determine whether any issue of fact pertinent to the ruling exists . . ." *Owens v. Tiber Island Condominium Association,* D.C.App., 373 A.2d 890, 894 (1977) (citing *International Underwriters, Inc. v. Boyle,* D.C.App., 365 A.2d 779, 782 (1976)). Appellees filed a statement of material facts as to which there was no genuine issue, in which they admitted, for purposes of the motion, all the facts set forth by appellant. In light of this admission, the court's finding that no material facts were in issue was proper.

The second prong of our review requires that we determine whether appellees were entitled to judgment as a matter of law. *Owens v. Tiber Island Condominium Association, supra* at 894 (citing *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962)). To do so, we must examine the law governing the allegations of the complaint and apply it to the uncontroverted facts.

 Appellant claimed that his father's will and codicils had been obtained by the use of fraud and deceit. To establish an action for fraud in the inducement, appellant would have to prove that

(1) wilful false statements of fact were made to the testator;

(2) the statements were made by a beneficiary under the will that was induced;

(3) the statements were intended to deceive the testator;

(4) the testator was actually deceived;

(5) the statements actually induced the testator to make a will; and

(6) the testator would not have made the induced will absent the false statements.

1 Page on Wills § 179 at 353 (1941). *See also Duckett v. Duckett,* 77 U.S.App.D.C. 303, 134 F.2d 527 (1943);[12] Atkinson on Wills § 56 at 265–67 (2d ed. 1953). None of the numerous facts in appellant's answers to interrogatories would allow a jury to find in his favor on the issues of fraud and deceit. Appellant's factual allegations are that: the Foundation is a charitable organization that was under his father's control before the will was executed; after the execution of the will, the appellee executors schemed to abrogate the children's rights to become members of the Foundation; the attorney who drafted the will was not the testator's regular attorney and was initially contacted by one of the appellees; and the Foundation entered into numerous improper business transactions after the will had been drafted. While these facts may form the underpinnings of a charge of fraud and deceit, they do not, standing alone, constitute issues of material fact with respect to inducement of a will. Nowhere does appellant allege that false statements induced his father to make a will, or that any other facts exist that would support such an allegation. Since appellees would be entitled to a judgment on these issues as a matter of law, the grant of summary judgment was proper.

 Appellant also claimed that the will and codicils were procured through duress, undue influence, and coercion. Duress, in the context of estate law, is "the use of coercion or force to such a degree that it destroys the free agency and will

---

**12.** In *Duckett v. Duckett, supra,* the beneficiary took sole charge of the ailing testatrix, made false statements to the testatrix's relatives to induce them not to visit her, and represented to the testatrix that her relatives had no interest in her. In reversing a directed verdict in favor of the appellees, the court stated that a jury could reasonably decide from this evidence that such conduct would constitute fraud.

power of the testator." 1 Page on Wills, *supra,* § 195 at 393. Undue influence is influence amounting to physical or moral coercion that forces the testator to exercise the judgment of another rather than his own. Atkinson on Wills, *supra,* § 55 at 255–56; 1 Page on Wills, *supra,* § 183 at 363. To constitute undue influence, the pressure on the testator must destroy his agency and free will; in effect, the will of another must be substituted for his own. *Towson v. Moore,* 11 App.D.C. 377, 381 (1897), *aff'd,* 173 U.S. 17, 19, 19 S.Ct. 332, 43 L.Ed. 597 (1899); Atkinson on Wills, *supra* at 256; 1 Page on Wills, *supra,* §§ 183 at 366, 184 at 368–69. It is not enough that there is a suspicion or possibility of undue influence, *In re Estate of Weir,* 154 U.S. App.D.C. 404, 408, 475 F.2d 988, 992 (1973) (citing *MacMillan v. Knost,* 75 U.S.App.D.C. 261, 262, 126 F.2d 235, 236, *cert. denied,* 317 U.S. 641, 63 S.Ct. 32, 87 L.Ed. 516 (1942)); there must be a definite fraudulent pressure on the testator. *Id.*

■ To support his allegations of undue influence, coercion, and duress, appellant asserts the following facts: a rabbi arranged for the attorney to draft the will; the attorney misspelled the name of one of the executors and insisted that the testator's children be included in the will; the attorney and the rabbi were later made honorary members of the Foundation; and the disposition to the children was disproportionate to the disposition to the Foundation. Viewing all of the facts set forth by appellant as true, as we must, and giving him the benefit of all inferences that could be drawn therefrom, *see United States v. Diebold, supra,* 369 U.S. at 655, 82 S.Ct. at 994, we agree with the trial judge that, as a matter of law, appellees were entitled to a judgment on these issues. Appellant has alleged many generalities, but no particulars to show that the influence, if any, rose to the level of improper, undue influence. *See In re Estate of Weir, supra,* 154 U.S. App.D.C. at 408, 475 F.2d at 992. He has cited no facts showing that his father's free agency was destroyed or that the will was a direct result of force or coercion. Mere suspicion is insufficient. Neither the fact

that the natural objects of the testator's bounty were disproportionately awarded under the will nor the fact that the will may be unnatural or unjust is enough to constitute undue influence. Atkinson on Wills, *supra,* § 55 at 255. Consequently, the grant of summary judgment on these issues was proper.

■ Appellant's final allegation was also properly dismissed. He claimed that the appellees, through breach of their fiduciary duties to the testator, through the use of the will and codicils, and through manipulation of various unnamed corporations, used and controlled the testator's estate to their own benefit. Such an allegation is wholly immaterial to the validity of the will, the only issue before the court, and was properly disposed of by the trial judge.

Accordingly, the judgment on appeal is *Affirmed.*