**In re ESTATE of Rahel Davies BROUN, Jennifer Rahel Moleon, et al., Appellants,**

v.

**E. Fontaine BROUN, Appellee.**

**No. 79–771.**

District of Columbia Court of Appeals.

Argued Feb. 7, 1980.

Decided April 18, 1980.

Rehearing and Rehearing En Banc Denied June 11, 1980.

Nicholas A. Addams, Washington, D. C., for appellants.

Frank Roberson, Washington, D. C., with whom Gail Starling Marshall, Washington, D. C., was on the brief, for appellee.

Before KELLY, GALLAGHER and PRYOR, Associate Judges.

GALLAGHER, Associate Judge:

This appeal in a will contest case challenges the trial court's grant of summary judgment to appellee Broun, the husband of testatrix and executor and primary beneficiary under her will. Appellants, the testatrix's two daughters, contend that the will should be invalidated because of appellee's

fraud and undue influence in procuring the will. We agree with the trial court that appellants raise no issue of triable fact, and affirm.

When Rahel Davies Broun and E. Fontaine Broun were married in 1955, Mrs. Broun's will left the bulk of her estate to her two daughters by previous marriages. After Mrs. Broun's father, Ambassador Davies, died in 1958, Mrs. Broun's sizeable inheritance was invested in a real estate partnership with her husband as managing partner. A second will, prepared in 1959, allocated the estate roughly in thirds to each daughter and Mr. Broun. The will challenged in this appeal was prepared in 1972, shortly before Mrs. Broun left Washington to visit her daughter in Florida.

Appellants contend that the circumstances surrounding the preparation of the 1972 will indicate fraud and undue influence. Mr. Broun, an attorney, was instrumental in procuring the 1972 will. He contacted his former law clerk, Mr. Joseph Oppenheimer, who had represented Mr. Broun in partnership matters in the past, but had never before represented Mrs. Broun. Together, on the Friday and Saturday prior to Mrs. Broun's departure, he and Attorney Oppenheimer prepared a will based on a draft prepared by Mr. Broun alone.

The will left Mr. Broun all of Mrs. Broun's interest in the partnership and named him executor. The daughters were to receive $100,000 each, their mother's share of the family estate Tregaron, and certain jewelry and bric-a-brac referred to as the Russian items. Each grandchild was to receive $25,000. The residuary estate was divided into two shares according to the tax laws then in effect. One share, which included the maximum marital deduction, was left outright to Mr. Broun. The other share was conveyed to Mr. Broun for his life, and then to Mrs. Broun's issue. In the event of a common disaster, Mrs. Broun's estate was to pass entirely to her husband's heirs.

Mrs. Broun came to Oppenheimer's office at 4 o'clock on a Saturday afternoon to execute the will. She spent less than an hour in private with Oppenheimer, whose memorandum of that conference states that Mrs. Broun "read the entire document and pursuant to my specific questions stated that she understood all provisions and that they accurately reflected her desires as to the disposition of her property." In particular, the memorandum stated that she understood each additional grandchild would receive $25,000 and that the residence would pass to Mr. Broun by right of survivorship regardless of any provisions of the will.

Pursuant to Mrs. Broun's request, the original copy of the will was sent to Mr. Broun. The 1972 will was never revised despite Mr. Oppenheimer's invitation to do so in light of the 1976 tax reform act. When Mrs. Broun died unexpectedly in 1978, no copy of the will was found among her belongings, although she possessed a will file. At Mrs. Broun's death, there was no cash in the estate for the bequests to her daughters and grandchildren.

In addition to the circumstances surrounding the preparation of the will and the contents of the will itself, appellants point to a number of comments made by Mrs. Broun about her will which arguably indicated that she was unfamiliar with the contents of the 1972 will, and which might therefore bolster the allegation that the will was procured through fraud and duress. According to the deposition of Mrs. Broun's sister, the testatrix stated on several occasions that she had left her property in thirds to her daughters and husband; however, it is unclear whether these conversations took place before revocation of the 1958 will, under which the estate was indeed bequeathed in thirds. The depositions report other comments, made to her daughters and others after the 1972 will was executed, to the effect that her daughters would be well provided for and that her husband would receive a "nest egg."

The general background emerging from the depositions is that Mrs. Broun was not business-minded and relied on her husband for the management of her affairs. She was known to sign business papers present-

ed by her husband without reading them. The record contained contradictory testimony about the relationship between husband and wife. It is undisputed, however, that testatrix was in good health and spirits at the time she signed the 1972 will and realized that she was executing her will.

Summary judgment is appropriate "if the pleadings, depositions [and] answers to interrogatories . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Super.Ct.Civ.R. 56(c). Appellants, the party opposing summary judgment here, are entitled to "the benefit of all favorable inferences that may reasonably be drawn from the evidence . . . ." *Semaan v. Mumford,* 118 U.S. App.D.C. 282, 283, 335 F.2d 704, 705 (1964), *quoting* 6 Moore's Federal Practice ¶ 56.15, at 2114 (2d ed. 1953). *See also Nyhus v. Travel Management Corp.,* 151 U.S.App. D.C. 269, 466 F.2d 440 (1972).

 In order to avoid summary judgment on the issue of fraud, appellants must allege facts which would prove that Mr. Broun made intentional false statements of fact to Mrs. Broun, which were intended to, and did, deceive her, and which caused her to execute a will of whose contents she was ignorant. 1 Page on Wills § 177 (1941). *See also Himmelfarb v. Greenspoon,* D.C. App., 411 A.2d 979 (1980); *Duckett v. Duckett,* 77 U.S.App.D.C. 303, 134 F.2d 527 (1943) (appellee, a nurse, took complete charge of testatrix, who was in a very weak condition, and made false statements that she was not permitted visitors; reversal of directed verdict in appellee's favor on issue of fraud). The law presumes that a testatrix of sound mind knows the contents of a will if she knows that she is executing a will and has had an opportunity to read it. 1 Page on Wills, *supra* at § 52. Evidence of fraud may rebut this presumption, but no such evidence has been presented here. Appellee introduced evidence that Mrs. Broun actually read the will and stated that she understood its contents, yet appellants presented no facts to support an allegation of fraud in connection with the crucial peri-

od of execution. Instead, appellants' claim of fraud rests on an attack on the credibility of Mr. Broun and Mr. Oppenheimer. "[T]he general rule is that specific facts must be produced in order to put credibility in issue so as to preclude summary judgment." 10 Wright & Miller, Federal Practice and Procedure: Civil § 2726, at 523 (1973); *see also Dyer v. MacDougall,* 201 F.2d 265 (2d Cir. 1952) (since defendants were only persons who could testify if they uttered alleged slanders, and since they would deny it, their summary judgment motion could be granted). Mr. Broun and Mr. Oppenheimer have already been cross-examined during deposition, and their stories have been consistent. No showing has been made that a trial would produce any different or additional evidence. *See Lundeen v. Cordner,* 354 F.2d 401, 408 (8th Cir. 1966) (summary judgment is appropriate where the only reason for proceeding to trial would be to test the credibility of a witness). Because appellants have not alleged any *facts* which, even if viewed in a light most favorable to them, *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993 994, 8 L.Ed.2d 176 (1962), would prove that Mrs. Broun's husband misled her about the meaning of the will or about any other material fact, the trial judge was correct in granting summary judgment on the issue of fraud.

As to the issue of undue influence, appellants urge us to apply a three-part test to determine if a *prima facie* case exists: (1) activity toward procurement of the will, (2) by one who is in some confidential relationship with the testator, and (3) that the will confers a benefit on the one who procured the will. Appellants point to no case where these factors alone were sufficient to establish undue influence. In *Towson v. Moore,* 11 App.D.C. 377, 381 (1897), *aff'd,* 173 U.S. 17, 19, 19 S.Ct. 332, 333, 43 L.Ed. 597 (1899), cited by appellants, the court merely stated that undue influence will not be found in the *absence* of such factors, and that the undue influence to annul a will must amount to force or coercion, destroying free agency. *Id.* The court stated that "[i]nflu-

ence gained by kindness and affection will not be regarded as *undue*, if no imposition or fraud be practiced, even though it induce the testator to make an unequal and unjust distribution of his property . . . if such disposition be voluntarily made." *Id.* at 386 (emphasis in original) (citing *Mackall v. Mackall,* 135 U.S. 167, 10 S.Ct. 705, 34 L.Ed. 84 (1890)).

Appellants further rely on *Hagerty v. Olmstead,* 39 App.D.C. 170 (1912), to support their three-part test. In *Hagerty,* testatrix's business manager, while testatrix was in extremis, urged the preparation of a will which left him approximately half the estate. The court placed the burden of refuting the inference of undue influence on the beneficiary, emphasizing that testatrix was of weak mind (though not such as to destroy testamentary capacity), and that the bequest was an "unnatural" one, so that very slight circumstances were sufficient to raise a jury question. Here, in contrast, the beneficiary was an object of natural affection and the testatrix was not in a weakened condition when she prepared her will. "[I]nfluence gained by years of mutual affection is not sufficient in law to establish undue influence." *In Re Estate of Weir,* 154 U.S.App.D.C. 404, 408, 475 F.2d 988, 992 (1973).

Appellants rely also on *Wiggins v. Smith,* 87 U.S.App.D.C. 112, 183 F.2d 831 (1950), where a will was executed immediately before the mother underwent an operation, while she was sick, in pain, and sedated. The will left almost everything to one daughter who had handled all her business affairs, and who arranged for the attorney and witnesses, and who did not inform her sisters that a will had been made or that they had been disinherited. The court, emphasizing that it weighed *all* the circumstances, held that there had been sufficient evidence to sustain a verdict of undue influence. One vital circumstance present in

*Weir* is missing here, however, because no one has challenged the fact that Mrs. Broun was in full possession of her faculties when she executed her will. The circumstances here are materially different, as there is no evidence that testatrix was in a weakened condition, and the will was executed in the context of a marriage where it is natural for one spouse to urge the other to make a will, to aid in the procurement of the will, and for a spouse to be the primary beneficiary.

We follow the test for undue influence as recently stated in this jurisdiction: "Undue influence is influence amounting to physical or moral coercion that forces the testator to exercise the judgment of another rather than his own." *Himmelfarb v. Greenspoon, supra* at 984. The facts set forth by appellant do not amount to undue influence, because they do not show that the will was the direct result of force or coercion, or that Mrs. Broun's free agency was destroyed. Mere suspicion of undue influence is not enough. *In Re Estate of Weir, supra* at 408, 475 F.2d at 992; *MacMillan v. Knost,* 75 U.S.App.D.C. 261, 262, 126 F.2d 235, 236, *cert. denied,* 317 U.S. 641, 63 S.Ct. 32, 87 L.Ed. 516 (1942).

Accordingly, appellee was entitled to summary judgment as a matter of law and the judgment is

*Affirmed.*