Helen L. BUSSELL, Appellant,

v.

BERKSHIRE ASSOCIATES

and

Smithy Braedon Property
Co., Inc., Appellees.

No. 92–CV–501.

District of Columbia Court of Appeals.

Submitted Feb. 16, 1993.
Decided June 10, 1993.

Helen L. Bussell, pro se.

Lawrence R. Berger, III, was on the brief for appellees.

Before FARRELL, Associate Judge, and PRYOR and BELSON, Senior Judges.

PER CURIAM:

The trial court dismissed appellant's *pro se* complaint with prejudice for failure to comply with an order compelling discovery. Because the trial court failed to furnish any indication that it exercised its discretion in deciding to apply the ultimate sanction of dismissal, we reverse the order from which this appeal is taken and remand for further proceedings.

I.

On May 29, 1990, appellant, Helen Bussell, a resident of 4201 Massachusetts Ave., N.W. since 1974, filed a *pro se* complaint suing appellees, Berkshire Associates and Smithy Braedon Property Co., Inc.—managers and owners of her apartment building—for injuries arising out of alleged disruptive noisemaking and other abuses. In

particular, appellant alleges that she suffers from the mentally adverse effects of acute sleep deprivation.

On June 20, 1990, appellees answered the complaint and served Interrogatories and a Request for Production of Documents. On August 10, 1990, appellant filed an "Objection to Interrogatories," alleging a "fail[ure] to comply with the rules of this court pertaining to the compilation of interrogatories." By letter dated August 31, 1990, appellees extracted and cited forty interrogatories from their initial list that they wished answered.[1] On January 24, 1991, appellees filed a motion to compel interrogatory answers and a request for production of documents. On January 25, 1991, a scheduling conference was held, at which time the trial court ordered appellant to provide answers to appellees' discovery request on or before March 15, 1991, or face potential dismissal of her complaint. On April 25, 1991, at pretrial, the court entered an order compelling appellant to provide her answers to appellees' discovery within thirty days of the date of the order. Specifically, defendants sought an answer to Interrogatory No. 28 which requested that plaintiff "state the date, time and precise location of the incident, and additional-ly give a factual statement as to how she contended the incident in the case occurred."

On May 24, 1991, appellant served her interrogatory answers on appellees. By letter dated July 7, 1991, appellees' counsel wrote to appellant informing her that several of her answers were non-responsive and requested a meeting pursuant to Super.Ct.Civ.R. 37(a).[2] That meeting was held on June 12, 1991, and after it counsel for appellees wrote appellant a letter in which he stated: "As I told you, your answer [to Interrogatory No. 28] should reflect *all* facts which form the basis of your complaint against the owner and management company which you've sued." (Emphasis in original.) On July 11, 1991, appellant filed a supplemental answer to Interrogatory No. 28.[3] On July 18, 1991, appellees filed a Motion to Dismiss Plaintiff's Complaint and for Sanctions pursuant to Super.Ct.Civ.R. 37(b)(2). The ground asserted was that appellant's answer to Interrogatory 28 was still unresponsive. In her opposition to appellees' motion to dismiss, appellant stated that

> Interrogatory No. 28 asks me to explain how the incident occurred, just as tho [sic] this protracted harassment case was

1. As the record before us is incomplete, we have no independent knowledge as to the bulk of appellees' initial request.

2. "Before any motion to compel discovery is filed, the affected parties or counsel must meet for a reasonable period of time in an effort to resolve the disputed matter."

3. The answer stated in full:
   *Interrogatory Answers*
   28. Give a factual statement as to how you contend the incident occurred.
      To mischievously describe a highly complex case involving important and pressing issues and all their ramifications including my being subjected to habitual cruel and inhumane treatment for nearly sixteen years that resulted in my undergoing very prolonged sleep deprivation which in turn, caused me to go into a rapid decline—to refer to all this as scaled down to "the incident, just as tho it were a specific incident is a grossly distorted understatement that is a grave injustice beyond endurance. And furthermore, to minimize damages is unexcusable.
      Had the defendants consulted policy analysts with expertise in real estate law, they could have established guidelines that would enable them to reduce turnover of tenants and of personnel, to enhance livability of premises, thus avoiding their constantly being on the receiving end of a wide variety of sensible retaliatory acts on an ongoing basis and their gaining an insight into behavioral psychology, particularly behavior under systemic stress and prolonged distress and also cognition or mental processes invariably led to litigations—in short, avoiding bad policies that reflected their impaired judgment.
      For additional discovery, I urge the re-reading of my complaint so as to familiarize oneself of what constitutes rascality and obtain a copy of my bibliography relating to books on systemic stress, sleep deprivation entries in medicus index of serials or journals, sleep/wake cycle disorders, neuroendocrine disease and its prognosis, cardiology textbooks on the endocrine heart, endocrine and metabolic emergencies and thermoregulatory disorders and concomitant weakened immune system and consequently infectious diseases; also the psychic effects of endocrine disease, or compile your own bibliography on the above subjects.

a single incident or an isolated occurrence. Quite the contrary, in the opening paragraph of my revised answer thereto, I focused on the inappropriateness of interrogatory No. 28, inasmuch as it is intended to apply to an accident case, not unlike previous interrogatories. I accordingly exercised my right to object to an inapropriate [sic] interrogatory by stating my reasons. . . .

On August 27, 1991, the trial court granted appellees' motion to dismiss and ordered appellant's complaint dismissed with prejudice. Appellant's subsequent motion for reconsideration was denied on April 2, 1992.

## II.

Super.Ct.Civ.R. 37 empowers the trial court to impose sanctions for failure to comply with the discovery process. *Vernell v. Gould*, 495 A.2d 306, 311 (D.C.1985). In particular, Rule 37 provides, in part:

(b) FAILURE TO COMPLY WITH ORDER.

(2) SANCTIONS BY THIS COURT. If a party ... fails to obey an order to provide or permit discovery ... the Court may make such orders in regard to the failure as are just, and among others the following:

\* \* \* \* \* \*

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing·the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.

■ We will overturn a trial court's imposition of sanctions only where there has been an abuse of discretion, *Himmelfarb v. Greenspoon*, 411 A.2d 979, 982 (D.C.1980) (citing *Nat'l Hockey League v. Met. Hockey Club, Inc.*, 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976)), *i.e.*, where "we are convinced that the court 'impos[ed] a penalty too strict or unnecessary under the circumstances.'" *Himmelfarb, supra*, 411 A.2d at 982 (quoting *Dodson v. Evans*, 204 A.2d 338, 341 (D.C. 1964)).

■ In employing these sanctions, the trial court's discretion should be guided by the two overarching principles that "the remedy of dismissal should be granted only in the most severe circumstances, *Koppal v. Travelers Indemnity Co.*, 297 A.2d 337, 339 (D.C.1972) ... [and] the sanction should, where possible, fit the offense. *Oaks v. Rojcewicz*, 409 P.2d 839, 844 (Alaska 1966)." *Pollock v. Brown*, 395 A.2d 50, 52 (D.C.1978). Moreover, in deciding whether the required "severe circumstances" exist, the trial court must consider (a) whether the failure to comply was willful,[4] and (b) whether the party requesting discovery was in any way prejudiced by the failure to comply with the discovery request. *Vernell, supra*, 495 A.2d at 311 (citing *Braxton v. Howard University*, 472 A.2d 1363, 1365 (D.C.1984)).

■ Incorporating here our previous definition of willful ("[a] conscious or intentional failure to act, as distinguished from an accidental or involuntary non-compliance, . . . ." *United States Merchandise Mart, Inc. v. D & H Distributing Co.*, 279 A.2d 511, 513 (D.C.1971) (citation omitted)), we cannot agree, based on the record before us, that appellant's failure to answer the interrogatories in a timely, responsive manner was necessarily willful.[5] Despite the fact that appellees felt it necessary to seek a motion to compel, appellant purported, at least, to make several attempts to comply with all forty of appellees' interrogatories, including Interrogatory 28b.

---

**4.** Rule 37 was amended in 1970 to clarify that "willfulness was relevant only in determining what sanctions to impose for failure to comply with discovery and was not a prerequisite to their imposition." *Ungar Motors v. Abdemoulaie*, 463 A.2d 686, 688 n. 8 (D.C.1983) (citation omitted). Notwithstanding, "there can be no doubt that wilfulness 'is still a factor to be considered in the court's choice of the sanction to be applied.'" *Braxton, supra*, 472 A.2d at 1365 n. 3 (citing *Ungar, supra*).

**5.** "In deciding whether there has been any abuse, we must examine the "entire proceedings prior to [the imposition of the sanction]." *Himmelfarb, supra*, 411 A.2d at 982 (quoting *United States Merchandise Mart, Inc., supra*, 279 A.2d at 513).

While not always the picture of lucidity, her responses to other interrogatories might be viewed as showing some effort to comply with the court's directives.[6] While we do not suggest that normally a trial court must make any explicit finding on willfulness, since this case must be remanded to the trial court for further proceedings for the reasons set forth below, we will expect the trial court, if it should once more undertake to consider dismissing this action by reason of this asserted failure of appellant to make discovery, to make a finding with respect to whether the conduct of appellant in failing to supply a more responsive answer was willful.

Assuming that the requisite willfulness is found to be present, we note that "the critical question here [becomes] the extent to which appellee[s] w[ere] prejudiced by appellant's unresponsiveness," because even if willfulness is established, "[t]he moving party must also demonstrate that the failure to answer resulted in some degree of prejudice before the court may forego lesser sanctions and dismiss the complaint." *Braxton, supra,* 472 A.2d at 1365.

■ Appellees state that "[a]ppellant's failure to respond to a question asking her to state the facts upon which she relies to substantiate the allegations of the complaint made it impossible for Appellees to prepare a defense to this action." In dismissing the complaint, the trial judge agreed that appellant's answer to this question was "again ... non responsive." What is lacking in the trial court's order, however, is any indication that he consid-ered lesser remedies for this failure than dismissal with prejudice. If indeed the judge was satisfied that appellees were prevented from preparing their defense by the vagueness or lack of specificity in appellant's answer, then the judge could have considered, for example, "staying further proceedings until the [discovery] order [was] obeyed," Rule 37(b)(2)(C), or ordered appellant to pay appellees' expenses and attorneys fees incurred in enforcing the order, or both. He could also have considered whether any of the more severe sanctions (still short of dismissal) set forth in Rule 37(b)(2) would have sufficed.[7]

Thus, even if findings of willfulness and prejudice had been made, we still would be required to reverse. "To ensure that dismissal is ordered only in cases of the most egregious violations of the discovery process," we require that the trial court "somehow indicate" that it has considered lesser sanctions. *Braxton, supra,* 472 A.2d at 1366. *See Ungar Motors v. Abdemoulaie,* 463 A.2d 686, 689 (D.C.1983) ("While a trial court is not required to state its reasons for choosing dismissal or a default judgment rather than some lesser sanction, a court which fails to state any reasons at all runs a serious risk that its decision will not withstand appellate scrutiny."). Here, the trial court failed to afford any indication whether it had considered and rejected any lesser sanctions. In line with this standard of review, we find the trial court's dismissal of appellant's claim deficient in that it fails to "reveal[ ] the kind of informed decision worthy of pre-

---

6. This scenario is unlike *Coleman v. Lee Washington Hauling Co.,* 392 A.2d 1067 (D.C.1978), where we upheld the trial court's dismissal under Rule 37. There, appellant had postponed depositions three times, was uncooperative ·in providing appellee with pertinent hospital records, "continu[ally] fail[ed] to provide answers [to interrogatories] after repeated requests by appellee and, after a court order directing answers before a specific date." *Id.* at 1070.

Similarly distinguishable is *Himmelfarb v. Greenspoon,* 411 A.2d 979 (D.C.1980), where appellant was afforded three opportunities to provide proper answers to appellee's interrogatories, twice in response to explicit court orders. All three sets of answers were substantially sim-ilar and almost a year had passed since the first set of interrogatories was propounded. There, the trial court's dismissal of the paragraph in the complaint to which the interrogatories were focused was upheld on appeal. Here, we do not find appellant's answers substantially similar, nor does our record reveal any directives from the bench attempting to clarify what was required.

7. Other sanctions available to the trial court faced with an obdurate litigant are articulated in Rule 37(b)(2), and include:

(D) ... an order treating as a contempt of court the failure to obey any orders....

sumed validity." *Koppal v. Travelers Indemnity Co.*, 297 A.2d 337, 339 (D.C.1972).

Accordingly, we reverse the order of dismissal and remand for further proceedings. In the course of those proceedings, the trial court may further consider appellee's motion to dismiss in light of the principles we have discussed.

*So ordered.*